348 So.2d 293 (1977)
Carey ENGLISH, Petitioner,
v.
Robert L. McCRARY, Jr., Respondent.
No. 49039.
Supreme Court of Florida.
May 6, 1977.
As Modified On Denial of Rehearing July 13, 1977.
*294 DuBose Ausley and C. Gary Williams of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for petitioner.
Robert L. Shevin, Atty. Gen., James D. Whisenand and Sharyn L. Smith, Asst. Attys. Gen., for amicus curiae.
No appearance for respondent.
William C. Ballard of Baynard, Lang & Ballard, St. Petersburg, for Times Pub. Co., amicus curiae.
*295 John W. Fleming, of Fleming, O'Bryan & Fleming, Fort Lauderdale, for Gore Newspapers Co.
William G. Mateer, of Mateer, Harbert, Bechtel & Phalin, Orlando, for Sentinel Star Co.
Allan Milledge of Milledge & Hermelee, Miami, for Sunbeam Television Corp.
Dan Paul, Parker D. Thomson and Sanford L. Bohrer, of Paul & Thomson, Miami, for The Miami Herald Pub. Co. and Gannett Co., Inc.
Harold B. Wahl, of Wahl & Gabel, Jacksonville, for Florida Pub. Co.
W.S. Rodgers, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tampa, for The Tribune Co., amici curiae.
Thomas T. Cobb, of Cobb, Cole, McCoy, Abraham, Bell, Bond, Monaco & Kaney, Daytona Beach, for News-Journal Corp.
KARL, Justice.
This cause is before us on petition for writ of certiorari granted to review the decision of the District Court of Appeal, First District, reported at 328 So.2d 257, which conflicts with State ex rel. Gore Newpapers Co. v. Tyson, 313 So.2d 777, 79 A.L.R.3d 382 (Fla. 4th DCA, 1975). We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
The conflicting decisions of the District Courts of Appeal present us with the narrow question of whether prohibition lies.[1] We conclude that it does not and that the decision for review sub judice should be affirmed.
Petitioner, Carey English, filed a petition for writ of prohibition with the District Court of Appeal wherein he alleged that he was a reporter for the Tallahassee Democrat, that the respondent Honorable Robert McCrary, Jr., refused to permit him to attend a hearing in the dissolution proceedings of Estelle and Harry Morrison, that the respondent failed to give him a good reason for exclusion of the press from the hearing, that the mere desire of litigants to conduct a private hearing is an insufficient predicate upon which the judge may exclude the public and press, that Harry Morrison is the duly elected State Attorney for the Second Judicial Circuit, that the public had a real and genuine interest in any litigation involving this public official and that not to allow the press access was in derogation of the fundamental right of the public and the press to access to all judicial proceedings.
The District Court determined that the suggestion for writ of prohibition did not state a prima facie case for issuance of the writ. The District Court, in reaching this conclusion, expressly stated:
"While the action of the chancellor in the case sub judice in denying the press *296 admittance to the dissolution of marriage hearing may have been an abuse of the trial judge's discretion (though we do not here rule that it was or was not an abuse of discretion) the fundamental initial question is whether or not a chancellor has jurisdiction in a dissolution of marriage proceeding to exercise his discretion to determine whether or not the public and press will be permitted to attend the hearing. If in all instances it is required that such a hearing be open to the public, then the chancellor had no discretion. Otherwise, the chancellor would clearly have the power, authority, and jurisdiction to make the ruling in a particular case. Although the ruling which he makes on the subject might constitute an abuse of discretion in a particular case, the extraordinary Writ of Prohibition would not be available to determine whether or not he correctly exercised his discretion."
The District Court of Appeal, First District, correctly determined, pursuant to all established precedent, that the suggestion for writ of prohibition filed by relator failed to state a prima facie case for issuance of the extraordinary writ of prohibition. None of the requisites essential to issuance of such a writ are present in the record before us. In fact, issuance of the writ under the circumstances presented thwarts the entire concept and purpose of the writ of prohibition.
Prohibition is an extraordinary writ, a prerogative writ, extremely narrow in scope and operation, by which a superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal possessing judicial or quasi-judicial power, may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not within its jurisdiction.
Historically, the writ appears to have been developed in the early stages of the development of English law. Originally, the primary purpose of the writ was to safeguard the jurisdiction of the king's court against encroachments of other courts, i.e. ecclesiastical courts, during the time of conflict between church and state. Pollock and Maitland, History of English Law, 2d ed., Vol. 1, pp. 129, 251, 479. It was intended to be a preventive rather than a remedial process, as is explained in an annotation on the history of the writ of prohibition contained in 77 A.L.R. 245-247:
"In Bacon's Abridgment the subject of Prohibition is thus introduced: `As all external jurisdiction, whether ecclesiastical or civil, is derived from the Crown, and the administration of justice is committed to a great variety of courts, hence it hath been the care of the Crown, that these courts keep within the limits and bounds of their several jurisdictions prescribed them by the laws and statutes of the realm. And for this purpose the writ of prohibition was framed; which issues out of the superior courts of common law to restrain the inferior courts, whether such courts be temporal, ecclesiastical, maritime, military, etc., upon a suggestion that the cognizance of the matter belongs not to such courts; and in case they exceed their jurisdiction, the officer who executes the sentence, and in some cases the judges that give it, are in such superior courts punishable, sometimes at the suit of the King, sometimes at the suit of the party, sometimes at the suit of both, according to the nature of the case.' And it is there concluded that `the object of prohibitions in general is the preservation of the right of the King's Crown and courts, and the ease and quiet of the subject.'"
In Florida, the courts have consistently determined, in accord with the historical understanding and background of the writ of prohibition, that it is meant to be very narrow in scope, to be employed with great caution and utilized only in emergencies. Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction. It is preventive and not corrective in that it commands the one to whom it is directed not to do the thing which the supervisory court is informed *297 the lower tribunal is about to do. Its purpose is to prevent the doing of something, not to compel the undoing of something already done. It cannot be used to revoke an order already entered. State ex rel. Harris v. McCauley, 297 So.2d 825 (Fla. 1974), State ex rel. R.C. Motor Lines, Inc. v. Boyd et al., 114 So.2d 169 (Fla. 1959), State ex rel. Shailer v. Booher, 241 So.2d 720 (Fla. 4th DCA, 1970). Where proceedings sought to be prohibited have been completed and matters therein disposed of, prohibition may not be used for the sole purpose of establishing principles to govern future cases. This court explicitly stated in State ex rel. Jennings v. Frederick, 137 Fla. 773, 189 So. 1 (1939).
"It appears well settled that, `Another distinguishing feature of the writ is that it is a preventive rather than a corrective remedy, and it issues only to prevent the commission of a future act, and not to undo an act already performed. When, therefore, the proceedings which it is sought to prohibit have already been disposed of by the court, and nothing remains to be done either by the court or by the parties, the cause having been absolutely dismissed by the inferior tribunal, prohibition will not lie, even though the case was thus disposed of after service upon the court of a rule to show cause why the writ should not issue. Nor will the suggestion that there are other suits of the same nature pending against the relator in the same court avail to procure the writ, since the court will not issue a prohibition in a case where it is not justified, for the sole purpose of establishing a principle to govern other cases.' See Sec. 766, page 710 of High's Extra-ordinary Legal Remedies. Also see 50 C.J. page 662, paragraph 18, and authorities cited."
Cf. Wetherell v. Thursby, 100 Fla. 108, 129 So. 345 (1930), wherein this Court held that, where issues had become moot by the passing of time, the proceeding in prohibition must be dismissed.
Prohibition will be invoked only in emergency cases to forestall an impending present injury where person seeking writ has no other appropriate and adequate legal remedy. Joughin v. Parks, 107 Fla. 833, 147 So. 273 (1933). However, absence of an adequate remedy by an appeal or writ of error is not, in and of itself, sufficient to authorize the writ. Crill et al. v. State Road Dept. et al., 96 Fla. 110, 117 So. 795 (1928). Furthermore, only when damage is likely to follow the inferior court's acting without authority of law or in excess of jurisdiction will the writ issue. Curtis et al. v. Albritton, 101 Fla. 853, 132 So. 677 (1931).
Prohibition lies to prevent an inferior tribunal from acting in excess of jurisdiction but not to prevent an erroneous exercise of jurisdiction. Burkhart v. Circuit Court of the Eleventh Judicial Circuit, 146 Fla. 457, 1 So.2d 872 (1941). In this state, circuit courts are superior courts of general jurisdiction, and nothing is intended to be outside their jurisdiction except that which clearly and specially appears so to be. Curtis et al. v. Albritton, supra. Discussing the remedy of prohibition in relation to the broad powers vested in the circuit courts, this Court, in State ex rel. B.F. Goodrich Co. et al. v. Trammell et al., 140 Fla. 500, 192 So. 175 (1939), opined:
"The circuit courts of the State of Florida are courts of general jurisdiction  similar to the Court of King's Bench in England  clothed with most generous powers under the Constitution, which are beyond the competency of the legislature to curtail. Ex Parte Henderson, 6 Fla. 279; Lamb v. State, 91 Fla. 396, 107 So. 535. They are superior courts of general jurisdiction, subject of course to the appellate and supervisory powers vested in the Supreme Court by the Constitution, and as a general rule it might be said that nothing is outside the jurisdiction of a superior court of general jurisdiction except that which is clearly vested in other courts or tribunals, or is clearly out side of and beyond the jurisdiction vested in such circuit courts by the Constitution and the statutes enacted pursuant thereto. Chapman v. Reddick, 41 Fla. 120, 25 So. 673; Curtis v. Albritton, 101 Fla. 853, 132 So. 677.

*298 "Circuit courts of the State of Florida have exclusive jurisdiction of all cases in equity, all cases at law, and all criminal cases not cognizable by inferior courts. Section 11, Article V, of the Constitution; State v. Sullivan, 95 Fla. 191, 116 So. 255.
"In 15 C.J. 851-853, it is aptly said:
"`Every court has judicial power to hear and determine the question of its own jurisdiction, both as to parties and as to subject matter, and necessarily does so by proceeding in the cause. When at any time or in any manner it is in good faith represented to the court by a party or an amicus curiae that it has not jurisdiction, the court will examine the grounds of its jurisdiction before proceeding further. The Court may receive testimony on a preliminary question to determine its jurisdiction, and is not bound to dismiss the suit on a mere allegation of lack of jurisdiction, but may inquire into the correctness of the averment. A court cannot pass on its own existence as a court.'
"`A Court having jurisdiction to decide as to its own jurisdiction in any particular case, it follows that its decision will have the same effect and conclusiveness as would its decision on any other matter within its jurisdiction; and where the jurisdiction of a court depends on a fact which it is required to ascertain, its judgment determining that such fact does or does not exist is conclusive on the question of jurisdiction, until set aside or reversed by direct proceedings. But where the question of jurisdiction is one of law, a court cannot by an erroneous decision acquire jurisdiction which it has not, or divest itself of jurisdiction which it has.'"
A clear distinction is drawn between assumption of jurisdiction to which the court has no legal claim and erroneous exercise of jurisdiction with which it is invested. In State ex rel. Rheinauer v. Malone, 40 Fla. 129, 23 So. 575, 576 (1898), this Court explicated:
"But it does not lie for errors or grievances which may be redressed, in the ordinary course of judicial proceedings, by appeal or writ of error. It is a fundamental principle, and one which will be strictly enforced, that this writ is never allowed to usurp the functions of a writ or error or certiorari, and can never be employed as a process for the correction of errors of inferior tribunals. The courts will not permit a writ which proceeds upon the ground of an excess or usurpation of jurisdiction to become an instrument itself of usurpation, or be confounded with a writ of error, which proceeds upon the ground of error in the exercise of a jurisdiction which is conceded. It does not lie to prevent a subordinate court from deciding erroneously, or from enforcing an erroneous judgment, in a case in which it has a right to adjudicate. In the application of the principle, it matters not whether the court below has decided correctly or erroneously; its jurisdiction of the matter in controversy being conceded, prohibition will not lie to prevent an erroneous exercise of that jurisdiction." (Emphasis supplied.)
Abuse of discretion by the inferior tribunal acting within its jurisdiction is not a matter to be determined by prohibition. State v. Hunt, 70 So.2d 301 (Fla. 1954), State ex rel. Jacksonville Ice & Cold Storage Co. v. Gray et al., 130 Fla. 359, 177 So. 849 (1937). If the existence of jurisdiction depends on controverted facts which the inferior court has the jurisdiction to determine, and the court errs in the exercise thereof, prohibition is not available. State ex rel. Park v. H.T. Poindexter & Sons Merchandise Co., 149 Fla. 765, 7 So.2d 452 (1941), Burkhart v. Circuit Court of Eleventh Judicial Circuit, supra, State ex rel. Schwarz v. Heffernan, 142 Fla. 137, 194 So. 313 (1940), State v. Drumright, 116 Fla. 496, 156 So. 721 (1934).
The suggestion for writ of prohibition must affirmatively show lack of jurisdiction in the lower court. Department of Public Safety v. Koonce, 147 Fla. 616, 3 So.2d 331 (1941), State v. Rowe, 104 So.2d 134 (Fla. 1st DCA, 1958).
Relating the aforegoing principles to the case at bar, we conclude that prohibition was not an available remedy under the circumstances presented. The instant case *299 does not involve a situation where the trial court was exceeding its jurisdiction or was without jurisdiction. The most involved here is a possible abuse of discretion.
Accordingly, the decision of the District Court is approved, State ex rel. Gore Newspapers Company v. Tyson, supra, is overruled, and the writ heretofore issued is discharged.
It is so ordered.
OVERTON, C.J., ADKINS and HATCHETT, JJ., concur.
ENGLAND, J., dissents with an opinion.
SUNDBERG, J., dissents and concurs with ENGLAND, J.
ENGLAND, Justice, dissenting.
I respectfully, but firmly, dissent.
In the case before us the district court denied a news reporter's request for a writ of prohibition directed at a trial court ruling to the effect that there is neither a right of public access nor an opportunity for hearing on the right of public access, to a civil (marriage dissolution) lawsuit.[1] In Tyson, another district court held in an identical proceeding that prohibition is available as a remedy for denial of access to a civil proceeding. I much prefer the result in Tyson to the one now adopted by a majority of my colleagues.
Persuasive arguments can be made both for and against the availability of the writ in these circumstances. In fact, there are articulate and scholarly analyses of both sides of the matter in the majority and dissenting opinions in Tyson, and in the majority opinion below.[2] I see no reason to restate the matters so carefully weighed and differentiated in those opinions. In contrast to a majority of my colleagues, I simply prefer the policy choice which makes the writ available in this class of cases, and which I believe better suits current societal needs.
The reasoning of the court below, the dissent in Tyson, and now a majority in this Court, reflects no more than a strict, if not slavish, adherence to the historical bases for writs of prohibition. While historical development is certainly an appropriate matter for courts to consider, new dimensions attend the problems which arise with ever-increasing frequency in the areas of free press and public access to governmental processes. I believe that Florida's constitutional remedies[3] should expand correlative with these needs,[4] if for no other reason than to guarantee that
"The courts shall be open to every person for redress of any injury... ."[5]
For that reason, I have no reluctance to expand the narrow, historical notion of prohibition to meet a need not otherwise met by traditional processes of appellate review.
*300 Even more compelling to me than my personal notion that courts should be accessible is the 1972 assertion by the citizens of Florida that the technical niceties of pleading which historically controlled access to the courts would no longer be available for that purpose. In that year the Constitution was amended to state that
"no cause shall be dismissed because an improper remedy has been sought."[6]
The majority here has denied a judicial forum to this reporter, and it offers no specific means of access to others in the same situation. I would not disregard the present concern of Carey English and the other news reporters who may be barred from assorted judicial proceedings by judicial whim, or the needs of the public simply because it may be possible to work out some process to solve their problem some day.
Until today, this Court has not only acknowledged but actually applied Article V, Section 2(a) of the Constitution. In State ex rel. Harris v. McCauley, 297 So.2d 825 (Fla. 1974), the only post-1972 case cited by the majority for its historical view of prohibition, both the majority and dissent agreed that although prohibition was improper the case would be treated and resolved as if it had been denominated a petition for a writ of habeas corpus.[7] In State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976), a unanimous Court held on facts very similar to those before us that although prohibition was technically not available to the news media to challenge a "gag order" in criminal cases (citing the Tyson case as supportive authority), the legal problem would be considered and resolved as if a petition for writ of certiorari had been sought. Nothing of significance that I can detect distinguishes a criminal case from a civil case as regards the procedural technique for initiating a challenge by persons not a party to the litigation. Indeed, the McIntosh opinion expressly states as much, although the comment was gratuitous and non-precedential in that proceeding.
In sum, I would provide a rapid means of access to appellate courts for the problem which cropped up in this case, and I prefer to call that means of access "prohibition" rather than wait until it can be denominated by some study committee as "appeal", "certiorari" or "review".
My conclusion that the remedy of prohibition will lie in civil as well as criminal cases to test the exclusion of the press and the public from judicial proceedings brings me to the second issue in this case  whether on the facts known to the district court a response should have been sought from the trial judge or, if no response was obtained, whether the writ of prohibition should have issued.[8] The obvious answer to these questions is that a response should have been sought, and if not obtained then prohibition should have been ordered. While the majority declares its allegiance to appellate court review for cloture orders, it has offered no guidance as to how that review may be sought. I think we can provide some help.
The alleged but skeletal facts presented to the district court suggested no cogent reason to support the closing of the proceeding by the trial judge. The only justification apparently offered English for his exclusion from the proceeding was the court's or the parties' view that divorce is "a private matter". There was no reason presented to the district court as to why this marriage dissolution could not be fairly resolved in public. In the absence of any reason, the proceeding should have been opened. In Miami Herald Publishing Co. v. *301 Collazo, 329 So.2d 333 (Fla.3d DCA), cert. denied, 342 So.2d 1100 (Fla. 1976), an absence of justification was found insufficient to allow a trial court to seal the settlement terms of a civil suit. I would adopt the view there expressed that neither a mere preference of the parties nor an unsupported fear of possible adverse effects on other pending litigation is sufficient reason to shroud a judicial proceeding, or any of its aspects, in secrecy. In the absence of "fair trial considerations" which would "result in any immediate threat to the administration of justice",[9] a trial is a public event which takes place on public property and over which the judiciary possesses no special editorial, censorial or suppression powers.
It is neither necessary nor appropriate in this case to attempt a listing of the circumstances where exclusion of the public or the press might be proper. As the district courts recognized in Tyson and Collazo, and as this Court has indicated in McIntosh, occasions may arise when full or partial exclusion of the public and the press will be appropriate.[10] Obviously, the trial judges of this state should have discretion to evaluate the peculiar circumstances of each particular case in order to deal with potential prejudice to the rights of litigants or to the authority of the court. To guarantee these judges time to reflect, and to assure that their actions are adequately reviewable, I would apply in these cases the suggestions offered by Justice Sundberg in his concurring opinion in the McIntosh case. In general these require that the press should be given fair notice and an opportunity to be heard before a trial court places any restraint on access to a court proceeding. Except in those rare situations when circumstances make it impossible (the special circumstances themselves being a reviewable question), a hearing should be conducted at a time which will permit appellate review of the court's decision without a need to stay the underlying case.[11] Additionally, the trial judge should explicitly state the reasons for his decision. Only by these means can litigants and the public have their respective needs fairly evaluated, and that evaluation fairly reviewed.
SUNDBERG, J., concurs.
NOTES
[1] The original opinion of the Court went beyond the single question for disposition to analyze the discretionary power of judicial officers to close proceedings, enter protective orders and seal files. That portion of the opinion announced that any restriction on the public's right to know or the First Amendment right of freedom of the press would be subject to careful scrutiny by any appropriate procedure. Such orders, we said, would be invalidated if they involved any excessive or improper use of the limited power.

Recognizing that questions of cloture may arise at any stage of any civil or criminal proceeding and under varying circumstances and that such questions involve basic constitutional rights of the parties, the public and the media, no specific method of review of cloture orders was suggested.
We observed that a study should be undertaken in an effort to develop rules providing procedures for speedy review of all orders closing any part of the proceedings or court records.
Pending disposition of a petition for rehearing, the petitioner and others requested and have been granted leave to present and argue a proposed rule in In Re Appellate Rules, Case No. 40,409, now pending in this Court. It is appropriate that the development of guidelines and procedural rules be undertaken by appropriate committees with the advice and recommendations of members of the public, media representatives, judicial officers and members of the Bar. The issue has been injected into In Re Appellate Rules, supra, at petitioner's request, where it will be carefully considered. It will also be promptly considered by other appropriate study groups. There is, therefore, no further need for the obiter dictum of the original opinion.
[1] It is alleged that a first request for permission to attend the dissolution hearing being conducted in the Leon County courthouse was made by the news reporter directly to Judge McCrary, and summarily denied. It is further alleged that a second request, made through counsel, was also denied on the ground that the proceeding was "a private matter". Finally, it is alleged that the reporter's counsel was also refused permission to present legal arguments to the trial judge in support of his request to open the proceeding. We must assume the accuracy of these allegations because the trial judge to whom prohibition was directed was not asked to file a return with the district court, and he neither appeared nor argued before us.
[2] Our constitutional role in resolving conflicts in the law which arise between district courts would be far less difficult if all cases of "direct conflict" came to us with contrasting views as well reasoned and fully developed as they are on this issue in this case.
[3] Prohibition is guaranteed in Article V, §§ 3(b)(4), 4(b)(3) and 5(b) of the Florida Constitution.
[4] The same conclusion has been reached by the courts of other states. Phoenix Newspapers, Inc. v. Superior Court, 101 Ariz. 257, 418 P.2d 594 (1966); E.W. Scripps Co. v. Fulton, 100 Ohio App. 157, 125 N.E.2d 896 (1955). See also Kirstowsky v. Superior Court, 143 Cal. App.2d 745, 300 P.2d 163 (1956). My views here do not suggest that I would acquiesce in the availability of prohibition in any other type of constitutional or non-constitutional confrontation. Those matters are for another day.
[5] Art. I, § 21, Fla. Const.
[6] Art. V, § 2(a), Fla. Const.
[7] 297 So.2d at 828 and 830.
[8] It should be noted that the district court and this Court both refused to stay the Morrison divorce proceeding pending consideration of the writ of prohibition and our review of its denial. As a consequence, the dissolution proceeding was concluded in closed proceedings. Nonetheless, we entertained certiorari based on the direct conflict of decisions in order to clarify the law with respect to the questions brought to us for review. For the reasons expressed in State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1976), our analysis of the merits of the controversy is not precluded by the conclusion of the underlying divorce proceeding.
[9] 329 So.2d at 338.
[10] The Legislature has chosen to expressly authorize or mandate closed proceedings where public disclosure of necessary evidence would thwart legislative policy, tend to be destructive of the judicial process, or be unjust to the parties. See Sections 39.09(1)(b), 63.162 and 742.031, Fla. Stat. (1975), involving respectively juvenile proceedings, adoptions and bastardy suits.
[11] See Judge Smith's concurring opinion below, cogently expressing the judiciary's universal disdain for the disruption of one of the most sensitive of judicial proceedings  a marriage dissolution.