BENTON, C.J.
After the trial judge denied their motion to dismiss respondents’ amended complaint for declaratory and supplemental relief, the President of the Florida Senate, the Speaker of the Florida House of Representatives, the Commissioner of Education, and the State Board of Education filed a petition for writ of prohibition, initiating original proceedings here in an effort to bring further proceedings in the circuit court to a halt. Because the present case lies at the intersection of well established rules governing writs of prohibition and significant, but unsettled, questions about Florida’s “paramount duty” to provide “for the education of all children residing within its borders,” Art. IX, § 1(a), Fla. Const., we deny the petition for writ of prohibition, but certify a question of great public importance to the Supreme Court of Florida.
Petitioners are defendants in the pending lawsuit that two not-for-profit corporations, two students attending public schools in Duval County, and four parents *467 or guardians of students attending public school, either in Duval or in Pasco Counties,[1] brought in Leon County Circuit Court. The respondents’ amended complaint for declaratory and supplemental relief, which the trial court declined to dismiss, alleges wide-ranging violations of article IX, section 1(a), which states, in relevant part:
The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education....
Art. IX, § 1(a), Fla. Const. In the course of its 135 paragraphs, respondents’ amended complaint alleges a failure to make adequate provision “for a uniform, efficient, safe, secure, and high quality system of free public schools” by, e.g., providing insufficient funding for public education, shifting responsibility for educational funding to local governments, providing inadequate resources for teachers’ salaries in particular, and adopting a so-called accountability policy that is an obstacle to high quality.
The amended complaint alleges that Florida’s public schools are not safe and secure, that graduation rates are too low, that student promotion and retention policies are ineffective, that results of achievement tests reveal various inadequacies, and much more. Petitioners moved to dismiss the amended complaint, relying on Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400, 407 (Fla.1996), for the proposition that the amended complaint raises only nonjus-ticiable “political” questions, see Baker v. Carr, 369 U.S. 186, 209, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), questions which the trial court — and, indeed, any court (according to the petitioners) — lacks jurisdiction to entertain. Rejecting petitioners’ argument that it lacked jurisdiction to decide any facet of any one of the respondents’ claims, the trial court denied the motion to dismiss.
“ ‘In this state, circuit courts are superior courts of general jurisdiction, and nothing is intended to be outside their jurisdiction except that which clearly and specially appears so to be.’ ” Mandico v. Taos Constr., Inc., 605 So.2d 850, 854 (Fla.1992) (quoting English v. McCrary, 348 So.2d 293, 297 (Fla.1977)). The petitioners’ apprehension at the prospect of burdensome discovery demands unduly discounts the protections they and all litigants will enjoy because any discovery that may occur will take place under the supervision of the able trial judge, if and as needed. More fundamentally, the petitioners’ asserted concerns about discovery do not speak to the only issue that is germane in prohibition proceedings: the nature and extent of the lower tribunal’s jurisdiction. A court of general jurisdiction, the circuit court has statutory authority to entertain claims for declaratory judgment. See §§ 86.011 and 86.061, Fla. Stat. (2010). Even if erroneous, the denial of a motion to dismiss is ordinarily no occasion for a reviewing court’s intervention in a proceeding pending in a trial court: “That a non-final order puts the parties to the expense of a trial that an appeals court may later determine to have been unnecessary is not a proper ground *468 for the grant of a petition for writ of common law certiorari. Every order denying a motion to dismiss is of this nature.” Naghtin v. Jones, 680 So.2d 573, 576 (Fla. 1st DCA 1996). See Leibman v. Sportatorium, Inc., 374 So.2d 1124, 1124 (Fla. 4th DCA 1979) (that petitioner might have to go through an unnecessary trial did not constitute material injury of an irreparable nature warranting grant of an extraordinary writ); Siegel v. Abramowitz, 309 So.2d 234, 235 (Fla. 4th DCA 1975) (facts that petitioner would have to go through trial under the burden of .the order complained of, would incur substantial expenses for experts and that, after all that, case might need to be retried held insufficient to show irreparable harm).
No appeal was taken from the denial of the petitioners’ motion to dismiss the amended complaint, nor could any appeal have been taken from that interlocutory ruling: With exceptions not pertinent here, see Fla. R.App. P. 9.130(c), a “defendant cannot appeal a nonfinal order which denies a motion to dismiss ... Fla. R.App. P. 9.130(a).” Pub. Health Trust of Dade Cnty. v. Diaz, 529 So.2d 682, 684 (Fla.1988). Instead, the defendants below instituted the present prohibition proceeding here in an effort to stymie further proceedings in the circuit court.
Prohibition is the extraordinary (or prerogative) writ a court issues in order to prevent an inferior court (or other inferior tribunal) from exercising jurisdiction over matters that lie outside the lower tribunal’s jurisdiction. See English, 348 So.2d at 296. Only where a tribunal purports to exercise jurisdiction over a case falling within a class of cases it is forbidden to consider is it appropriate for a higher court to grant the extraordinary writ of prohibition. As long as a lower court has subject matter jurisdiction, defined as “the power of the court to deal with the class of cases to which the particular case belongs,” Lovett v. Lovett, 93 Fla. 611, 112 So. 768, 775 (1927), proceedings should be permitted to run their course there, with resort to appeal after the lower court proceedings conclude, if necessary to correct judicial error.[2]
Prohibition lies to redress an inferior tribunal’s usurpation of jurisdiction, but it does not lie to prevent mere error in the exercise of the inferior tribunal’s jurisdiction. See English, 348 So.2d at 298. Prohibition is unavailable to divest a lower tribunal of jurisdiction to hear and determine its own jurisdiction, or to test the correctness of a jurisdictional determination that depends on fact finding the lower tribunal is charged with making. See Mandico, 605 So.2d at 854. The writ is *469 narrow in scope, is to be employed with great caution, and, our supreme court has even said, is to be utilized only in “emergencies.” See English, 348 So.2d at 296. There is no emergency here.
The trial court has been asked to construe the Florida Constitution, not the constitution of any other state. But analogous questions have arisen under the constitutions of other states, and the majority rule is that educational adequacy provisions in state constitutions are judicially enforceable. The court in Committee for Educational Rights v. Edgar, 174 Ill.2d 1, 220 Ill.Dec. 166, 672 N.E.2d 1178 (1996), cited in the dissenting opinion, recognizes that the contrary view, viz., that such questions are nonjusticiable, is a minority view:
We are well aware that courts in other jurisdictions have seen fit to define the contours of a constitutionally guaranteed education and to establish judicial standards of educational quality reflecting varying degrees of specificity and deference to the other branches of government. See, e.g., Campbell County School District v. State, 907 P.2d 1238, 1265 (Wyo.1995); Campaign for Fiscal Equity, Inc. v. State, 86 N.Y.2d 307, 317-19, 655 N.E.2d 661, 666-76, 631 N.Y.S.2d 565, 570-71 (1995); Claremont School District v. Governor, 138 N.H. 183, 192, 635 A.2d 1375, 1381 (1993); McDuffy v. Secretary of the Executive Office of Education, 415 Mass. 545, 606, 615 N.E.2d 516, 548 (1993); Tennessee Small School Systems v. McWherter, 851 S.W.2d 139, 147-48 (Tenn.1993) (dicta); Abbott v. Burke, 119 N.J. 287, 303-04, 575 A.2d 359, 367 (1990); Rose v. Council for Better Education, Inc., 790 S.W.2d 186, 208-09 (Ky.1989); Pauley v. Kelly, 162 W.Va. 672, 705-06, 255 S.E.2d 859, 874 (1979); Seattle School District No. 1 v. State, 90 Wash.2d 476, 502, 585 P.2d 71, 86-87 (1978); see also Idaho Schools for Equal Educational Opportunity v. Evans, 123 Idaho 573, 583-84, 850 P.2d 724, 734 (1993) (holding that it was court’s duty to interpret constitutional “thoroughness” requirement, but adopting standards promulgated by the executive branch); Unified School District No. 229 v. State, 256 Kan. 232, 275, 885 P.2d 1170, 1186 (1994) (court would not substitute its judgment as to what type of education was “suitable” within the meaning of the constitution for the standards developed by the legislature and state department of education; where all schools were able to meet those standards, the school finance statute was upheld); McDaniel v. Thomas, 248 Ga. 632, 633, 643-44, 285 S.E.2d 156, 157, 165 (1981) (while holding that the question of whether financing system deprived children of constitutionally guaranteed “adequate education” was justiciable, court would only inquire whether system met a lower standard of providing a minimum or basic education; because of the inherent difficulty in establishing a judicially manageable standard for determining whether or not pupils are being provided an “adequate education,” legislative branch must give content to the term “adequate”).
Id. at 1191-92. Although the Edgar court declined to decide whether educational institutions and services in Illinois were “high quality,” it did apparently address and decide the question whether the present school funding system was “efficient” within the meaning of the Illinois Constitution.[3] Id. at 1183. As in the cases the Edgar court cited, in “Lake View School Dist. No. 25 of Phillips County v. Hucka- *470 bee, 349 Ark. 116, 76 S.W.3d 250 (2002), the court held that the constitutionality of the public school funding system was a justiciable issue.” Meira Schulman Ferziger, Annotation, Procedural Issues Concerning Public School Funding Cases, 115 A.L.R. 5th 563, § 4(a) (2004). See also Leandro v. State, 346 N.C. 336, 488 S.E.2d 249, 253 (1997).
The Idaho Supreme Court said in Evans, rejecting the argument that it should not involve itself “in the complicated determination of what is a ‘thorough’ education” and should instead defer to the other branches of government:
Mindful that “[arguments erupt at the drop of a hat as to what is or is not necessary in an educational system [and as to] what is or is not a frill,” Thompson [v. Engelking, 96 Idaho 793, 814, 537 P.2d 635, 656 (1975) ] (Shepard, J. concurring), and that this Court is not well equipped to legislate “in a turbulent field of social, economic and political policy,” Thompson, 96 Idaho at 798, 537 P.2d at 640, we decline to accept the respondents’ argument that the other branches of government be allowed to interpret the constitution for us. That would be an abject abdication of our role in the American system of government.
Passing on the constitutionality of statutory enactments, even enactment with political overtones, is a fundamental responsibility of the judiciary, and has been so since Marburg v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1813) [1803].
Miles v. Idaho Power [Co., 116 Idaho 635, 640, 778 P.2d 757, 762 (1989) ].
850 P.2d at 734. We are unwilling to hold, as petitioners urge, that it is a foregone conclusion that the circuit court cannot pass on the constitutionality of any statutory enactment affecting the provision of “a uniform, efficient, safe, secure and high quality system of free public schools.” Fla. Const. Art. IX, § 1.
Petitioners argue that the respondents’ sweeping challenge to the adequacy of Florida’s education system bears a strong resemblance to the challenge that failed in Coalition,[4] and that “blanket assertions” about Florida’s entire educational system cannot give rise to circuit court jurisdiction; they assert that the political question doctrine precludes adjudication of cases involving broad claims of an inadequate educational system in Florida. The supreme court did rule against the Coalition plaintiffs on appeal, on grounds that judicial intervention without appropriate standards for determining “adequacy” *471 would create a “substantial risk of judicial intrusion into the powers and responsibilities assigned to the legislature, both generally (in determining appropriations) and specifically (in providing by law for an adequate and uniform system of education).” Coalition, 680 So.2d at 408. The same can be said here, petitioners maintain, arguing that the judicial relief respondents seek includes additional state spending on education, even though no court has authority to order such relief. See Art. V, § 14(d), Fla. Const. (“The judiciary shall have no power to fix appropriations.”).
This argument is available to the petitioners on appeal, if and when they suffer an adverse judgment in the proceedings pending below. But the appellants in Coalition were in a different procedural posture than the petitioners occupy in the present case. The Coalition plaintiffs lost in the trial court, and then appealed the final judgment dismissing their claims. In the present case, the plaintiffs merely cleared a preliminary hurdle in the trial court, when the defendants’ motion to dismiss was denied. The defendants are here seeking to derail proceedings in the trial court before they can conclude there.
Even a cursory glance at the three separate opinions the Coalition decision yielded reveals that at least a majority of the justices — Justices Overton, Shaw, Kogan and Anstead — were of the view that the circuit court had- jurisdiction to decide claims of constitutional inadequacy. Justices Grimes, Harding and Wells joined the majority per curiam opinion in Coalition, affirming the final judgment that had dismissed the constitutional challenge to educational adequacy. Justices Anstead, Ko-gan and Shaw dissented in part, voting not to affirm but to “reverse the dismissal of this action and remand for further proceedings so that a factual context can be established for determining whether the legislature has complied with the mandate of the people of Florida to make adequate provision for a uniform system of free public schools.” 680 So.2d at 410 (An-stead, J., dissenting). Justice Overton, who can be viewed as casting the deciding vote, wrote a concurring opinion “agreeing] with the majority that a proper showing of inadequacy has not been made in this case,” but making clear that a cause of action for failure to meet the requirements of Article IX, section 1(a) could be pleaded: “For example, were a complaint to assert that a county in this state has a thirty percent illiteracy rate, I would suggest that such a complaint has at least stated a cause of action under our education provision.” Id. at 409 (Overton, J., concurring).
The constitutional provision at issue, Article IX, section 1, was amended in 1998, moreover, to describe education as a “fundamental value” and a “paramount duty of the state,” and to require that adequate provision be made by law not only for a “uniform” system of free public education, but also for a system that is “efficient, safe, secure, and high quality.” Our supreme court has since interpreted the 1998 amendment as a response to the Coalition decision, a change in language intended to “ ‘provide constitutional standards to measure the “adequacy” provision found in the second sentence of section 1.’ ” Bush v. Holmes, 919 So.2d 392, 404 (Fla.2006) (quoting William A. Buzzett and Deborah K. Kearney, Commentary to 1998 Amendment, 26A, Fla. Stat. Ann., Art. IX, § 1, Fla. Const. (West Supp. 2006)).[5]
*472 In keeping with the commentary it quoted, the court characterized the amendment in Bush v. Holmes as “provid[ing] standards by which to measure the adequacy of the public school education provided by the state,” id. at 403, stating that the revised constitutional provision “sets forth how the state is to carry out [the] education mandate, specifically, that '[Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools.’ ” Id. at 405. We are, of course, bound by the decision of the supreme court in Bush v. Holmes. Albeit in obiter dicta, we said as much in School Board of Miami-Dade County v. King, 940 So.2d 593, 602 (Fla. 1st DCA 2006):
We read Brown[ v. Firestone, 382 So.2d 654 (Fla.1980) ], Coalition, and Holmes as delineating that any citizen/taxpayer may bring a declaratory action to challenge the constitutionality of provisions in a general appropriations act, including a claim that the state has failed to make adequate provision for a uniform system of free public schools as required by Article IX, section 1, and that the standard for determining whether the legislature has made adequate provision for public schools is whether the resources allocated by the legislature are sufficient to provide “a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education,” as required by the Florida Constitution.
The present case is, to be sure, distinguishable from King, which featured an attack on internal legislative processes, an attack we were unwilling to allow. Nor is the present case one where “the authority of each house of the legislature, vis-a-vis article III, section 4(a) and article II, section 3 of the Florida Constitution, to determine its own internal procedure is at issue and ... neither the constitutionality of any enacted statute, nor any policy commitment of the state of Florida, nor the balancing of compelling interests of the state are at issue.” Moffitt v. Willis, 459 So.2d 1018, 1020-21 (Fla.1984).
In the present case, no claim depends on any procedure internal to the Legislature, and the educational “policy commitment of the state of Florida” is very much at issue. *473 We cannot say categorically that not a single one of respondents’ claims entitles the respondents to declaratory judgment— which, of course, may or may not uphold the plaintiffs’ position(s) on the merits. The dissenting opinion argues that “the trial court’s order denying the petitioners’ motion to dismiss violates the separation of powers because it violates the people’s fundamental right to enact education policies through their elected representatives.” Post, p. 18. The order denying the motion to dismiss does no such thing. Proceedings below have scarcely begun and their outcome is uncertain. If and when the petitioners suffer an adverse judgment, plenary review is available.
Constrained to deny the petition for writ of prohibition, we do so with utmost respect for a coequal branch of government; and do so even though we are well aware that the constitutional duty to ensure that adequate provision is made for public education is the Legislature’s in the first instance: The constitutional provision at issue begins with these words: “Adequate provision shall be made by law ....” Art. IX, § 1(a), Fla. Const, (emphasis supplied). While the jurisdiction of the court below to grant declaratory relief requires that we deny the petition for writ of prohibition, we are uncertain as to whether — and do not decide that — the trial court has any ability to grant relief beyond that point.
Recognizing the good faith in which the petition for writ of prohibition has been filed, and the importance of interbranch cooperation in discharging “a paramount duty of the state,” Art. IX, § 1(a), Fla. Const., we certify the following question:
DOES ARTICLE IX, SECTION 1(A), FLORIDA CONSTITUTION, SET FORTH JUDICIALLY ASCERTAINABLE STANDARDS THAT CAN BE USED TO DETERMINE THE ADEQUACY, EFFICIENCY, SAFETY, SECURITY, AND HIGH QUALITY OF PUBLIC EDUCATION ON A STATEWIDE BASIS, SO AS TO PERMIT A COURT TO DECIDE CLAIMS FOR DECLARATORY JUDGMENT (AND SUPPLEMENTAL RELIEF) ALLEGING NONCOMPLIANCE WITH ARTICLE IX, SECTION. 1(A) OF THE FLORIDA CONSTITUTION?
Accordingly, for the reasons stated, the petition for writ of prohibition is denied, and the foregoing question is certified to the Supreme Court of Florida as being a question of great public importance.
DAVIS, VAN NORTWICK, PADOVANO, LEWIS, CLARK, and MARSTILLER, JJ., concur.
WOLF, J., specially concurs.
ROBERTS, J., dissents in an opinion with which HAWKES, THOMAS, WETHERELL, ROWE, RAY, and SWANSON, JJ., concur.

. At this juncture, there is no question before us as to whether any particular individual or entity — whether plaintiff or defendant below — is a proper party' either to the present proceedings or to the proceedings in the trial court.

. [I]n civil cases certiorari is rarely granted because the petitioner generally cannot show that any potential injury cannot be rectified on appeal. The caselaw is clear that "[c]er-tiorari is not designed to serve as a writ of expediency and should not be granted merely to relieve the petitioners seeking the writ from the expense and inconvenience of a trial.” Whiteside v. Johnson, 351 So.2d 759, 760 (Fla. 2d DCA 1977). See also Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987) (litigation of a non-issue and inconvenience and expense of same not the type of harm sufficient to permit certiorari review); Continental Equities, Inc. v. Jacksonville Trans. Auth., 558 So.2d 154 (Fla. 1st DCA 1990) (fact that if ruling on damages was incorrect, matter would have to be retried after appeal and at great expense to the parties did not entitle petitioner to writ of certiorari to review the ruling); Kessel Const. Corp. v. Clark-Haney Dev. Team, 487 So.2d 1123 (Fla. 4th DCA 1986) (Glickstein, J., concurring) (cost of trial and appeal is not the kind of damage certiora-ri is intended to forestall).
Naghtin v. Jones, 680 So.2d 573, 577 (Fla. 1st DCA 1996) (quoting Riano v. Heritage Corp. of South Fla., 665 So.2d 1142, 1145 (Fla. 3d DCA 1996)).

. Section 1 of article X of the Illinois Constitution provides, in part: "The State shall provide for an efficient system of high quality public educational institutions and services.”

. In Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (Fla. 1996), a group of public school students, their parents and guardians, school boards and their members sued various state officials, including the Governor, the President of the Senate, the Speaker of the House, and the Commissioner of Education, asking the trial court to declare an adequate education a fundamental right under the Florida Constitution that the state had failed to provide by failing to allocate adequate resources for a uniform system of free public schools. The trial court dismissed the complaint with prejudice, on grounds that it presented a nonjusticiable political question, and that the granting of relief would necessarily require the court to usurp or intrude upon the appropriation power reserved to the Legislature. Id. at 402.
The supreme court affirmed, holding that "the legislature has been vested with enormous discretion by the Florida Constitution to determine what provision to make for an adequate and uniform system of free public schools.” Id. at 408. Based on this "enormous discretion,” the separation of powers doctrine, and the dearth of judicially manageable standards in the text of the education article (before its revision) for determining the "adequacy” of education on a statewide basis, the supreme court upheld the trial court’s dismissal of the claims stated in Coalition. Id.

. In relevant part, the Commentary to 1998 Amendment reads, as follows:
The addition of "efficient, safe, secure, and high quality” represents an attempt by the 1997-98 Constitution Revision Commis *472 sion to provide constitutional standards to measure the "adequacy” provision found in the second sentence of section 1. The action of the commission was in direct response to recent court actions seeking a declaration that Article IX, section 1 created a fundamental right to an adequate education, which the state had arguably violated by failing to provide sufficient resources to public education. In Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (Fla.1996), the court rejected the notion of a fundamental right to education and found that the issue of "adequacy" was a nonjusticiable, political question. The court found that absent definable standards to provide guidance in determining "adequacy” the court would be usurping the legislature’s powers. Subsequently in Advisory Opinion to the Attorney General Re: Requirements for Adequate Puh-lie Education Funding, 703 So.2d 446, 449 (Fla.1997), Justice Anstead, writing in a dissent, noted that the court would have benefited in the earlier Coalition for Adequacy case "if there had been an express statement in the constitution defining ‘adequate provision' to guide us.” In direct response to those rulings, the 1997-98 Constitution Revision Commission added “efficient, safe, secure, and high quality” as standards for determining the "adequacy” of public education. In other states, these same terms have been found to be measurable and meaningful. (See DeRolph v. State, 78 Ohio St.3d 193, 677 N.E.2d 733 (1997) (the court found meaningful standards within the “thorough and efficient standard” established by the Ohio Supreme Court)).
William A. Buzzett and Deborah K. Kearney, Commentary to 1998 Amendment, 26A, Fla. Stat. Ann., Art. IX, § 1, Fla. Const. (2010).