659 So.2d 1055 (1995)
Lawton CHILES, etc., Petitioner,
v.
Robert MILLIGAN, etc., et al., Respondent.
No. 85870.
Supreme Court of Florida.
August 24, 1995.
*1056 W. Dexter Douglass, General Counsel and Deborah K. Kearney, Deputy General Counsel, Office of the Governor, Tallahassee, for petitioner.
Robert B. Beitler, Chief Counsel and Andrea Moreland, Assistant General Counsel, Office of the Comptroller, Tallahassee, Donald L. Bell, General Counsel, Department of State, Tallahassee, B. Elaine New and Gerald B. Curington, Tallahassee, on behalf of the Florida House of Representatives; Robert L. Shevin and Richard B. Simring of Stroock & Stroock & Lavan, Miami, Florida, on behalf of the Florida Legislature; and D. Stephen Kahn of Kahn & Dariotis, P.A., Tallahassee, Florida, on behalf of the Florida Senate, for respondents.
John D. Carlson of Gatlin, Woods & Carlson, Tallahassee, amicus curiae for Florida School Boards Association, Inc., Florida Association of District School Superintendent's, Inc., and Florida Association of School Administrator's, Inc.
Thomas W. Brooks of Meyer and Brooks, P.A., and Sally C. Gertz, Tallahassee, amicus curiae for Florida Teaching Profession-National Education Association and Florida Education Association/United, American Federation of Teachers.
GRIMES, Chief Justice.
Governor Lawton Chiles petitions this Court for a writ of mandamus which would require: (1) the Secretary of State to expunge an allegedly unconstitutional proviso to Specific Appropriation 150 of the 1995-1996 General Appropriations Act from the official records of the State; and (2) the Comptroller to ensure that this expunction is reflected in the financial operations of the State. The Legislature[1] counterpetitions for a writ of mandamus which would require: (1) the Secretary of State to expunge an allegedly unconstitutional gubernatorial veto of the challenged proviso from the official records of the State; and (2) the Comptroller to ensure that this expunction is reflected in the financial operations of the State. We have jurisdiction pursuant to article V, section 3(b)(8) of the Florida Constitution.
Section 236.081, Florida Statutes (Supp. 1994), delineates a formula for determining the annual allocation from the Florida Education Finance Program to each of Florida's sixty-seven school districts for the operation of schools. Specific Appropriation 150 of the 1995-1996 General Appropriations Act allocates funds from the Florida Education Finance Program for the operation of schools including $4,946,606,062 from the General *1057 Revenue Fund and $45,400,000 from the Principal State School Trust Fund.
Specific Appropriation 150 contains a proviso characterized as a "classroom enhancement incentive" which states:
A classroom enhancement incentive shall be included in the calculation of each district's entitlement to funds appropriated in Specific Appropriation 150 and shall be calculated as follows: (Step 1) Each district's 1994-95 total classroom salaries and total staff salaries shall be divided by the district's 1994-95 full-time-equivalent (FTE) weighted student enrollment.
Classroom salaries shall be the total of salaries paid to full time regular or temporary teachers and full time classroom aides. Total staff salaries is the amount paid to all district employees. Non-classroom salaries shall be the difference between total staff salaries and classroom salaries. (Step 2) Classroom salaries per student shall be calculated as a percent of total salaries per student for each district. (Step 3) An amount shall be calculated for each district that is the lesser of (a) five percent (5%) of each district's 1994-95 non-classroom salaries or (b) an amount necessary to achieve the same proportion of classroom to total salaries as the district that has the highest proportion of classroom to total salaries. (Step 4) The amount calculated in Step 3 shall be added to each district's total actual 1994-95 classroom salaries and that sum shall be divided by the district's weighted FTE enrollment and shall be calculated as a percent of total 1994-95 staff salaries per weighted student. (Step 5) In the third calculation of the 1995-96 Florida Education Finance Program, the calculations in Steps 1 and 2 shall be repeated using 1995-96 data. (Step 6) If the district's 1995-96 proportion of actual classroom to total salaries is less than the proportion calculated in Step 4, an amount necessary to achieve the Step 4 proportion shall be calculated and that amount shall be deducted from the district's total FEFP entitlement and shall be reallocated among districts that did achieve the proportion of classroom to total salaries calculated in Step 4. (Step 7) If the amount calculated in Step 6 is greater than the difference between 1994-95 total funds available and the first calculation of 1995-96 total funds available, the Step 6 reallocation amount shall be reduced to the difference between 1994-95 and 1995-96 total funds available, or to zero, whichever is greater. Total funds available are the sum of state formula and categorical funds and local required and discretionary funds. Limited only by the availability of classroom space, the first priority for the use of funds redirected to classroom expenditures shall be to reduce the size of each class in grades Kindergartern [sic] through third to 20 students for each full-time equivalent (FTE) teacher and 10 students for each full-time equivalent teacher aide. The Commissioner of Education shall, by December 1, 1995, report to the Legislature the number of elementary classroom teachers and teachers' aides in each grade in each district and the average number of students in each elementary school classroom in each grade in each district. This report shall be calculated by dividing the number of elementary school classes in each grade in each district by the sum of the number of students in each class in each grade in each district. The report shall also compare the 1995-96 average number of students in each elementary classroom with the 1994-95 average elementary classroom size. The Commissioner shall include in this report a statement from each district describing actions taken by the district to reduce the average number of students in each elementary classroom.
Ch. 95-429, § 2(150), Laws of Fla. In short, this proviso adjusts the amount allocated to a school district under section 236.081 upwards or downwards depending upon whether the school district meets a targeted ratio of classroom salaries to total salaries.[2] The proviso is designed to induce school districts to redirect funding from non-classroom employees *1058 to classroom teachers in order to reduce the size of classes in Florida's schools. The Governor vetoed this proviso without vetoing Specific Appropriation 150 of the 1995-1996 General Appropriations Act in its entirety.
The Governor's petition challenges the constitutionality of the classroom enhancement incentive proviso. He contends that the challenged proviso impermissibly modifies the funding formula set forth in section 236.081 in violation of article III, section 12 of the Florida Constitution. The Legislature counterpetitions contending that the Governor impermissibly vetoed the challenged proviso without vetoing the appropriation to which it relates. In response, the Governor concedes that his veto of the challenged proviso is contrary to the provisions of article III, section 8(a) of the Florida Constitution.[3] Thus, we are only concerned with the validity of the proviso.
Article III, section 12 of the Florida Constitution provides: "Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject." In Brown v. Firestone, 382 So.2d 654, 663-64 (Fla. 1980), this Court recognized that
[t]wo major considerations underlie the "one subject" requirement of article III, section 12. The first is the need to prevent "logrolling" in appropriations bills... .
The second reason behind the one subject requirement is to ensure the integrity of the legislative process in substantive lawmaking... .
Two principles logically follow from the above analysis. First, an appropriations bill must not change or amend existing law on subjects other than appropriations... . Were we to sanction a rule permitting an appropriations bill to change existing law, the legislature would in many instances be able to logroll, and in every instance the integrity of the legislative process would be compromised.
Second, article III, section 12, will countenance a qualification or restriction only if it directly and rationally relates to the purpose of an appropriation and, indeed, if the qualification or restriction is a major motivating factor behind enactment of the appropriation.
Our task, therefore, is to determine whether the challenged proviso runs afoul of either of the principles this Court recognized in Brown.
In Gindl v. Department of Education, 396 So.2d 1105, 1106-07 (Fla. 1979) (on rehearing), this Court considered the constitutionality of an item in the 1977-1978 General Appropriations Act which modified the formula used to allocate funds in section 236.081, Florida Statutes (Supp. 1976). Relying on Brown, we held that the Legislature's alteration of the section 236.081 distribution formula in an appropriations act violated article III, section 12 of the Florida Constitution. Implicit in our decision was the determination that the distribution formula set out in section 236.081 constituted an existing law on a subject other than appropriations.
The Legislature seeks to distinguish Gindl by pointing to a subsequent amendment to section 263.081. Prior to 1988, the introductory clause to section 236.081 read: "The annual allocation from the Florida Education Finance Program to each district for operation of schools shall be determined as follows." § 236.081, Fla. Stat. (1987). In 1988, the introductory clause to section 236.081 was amended to read: "If the annual allocation from the Florida Education Finance Program to each district for operation of schools is not determined in the annual appropriations act or the substantive bill implementing the annual appropriations act, it shall be determined as follows." Ch. 88-161, § 1, at 871, Laws of Fla. Thus, the Legislature argues that section 236.081 as amended permits the Legislature to delineate a funding formula for determining the annual allocation from the Florida Education Finance Program in the annual appropriations act or the substantive bill implementing the annual appropriations act.
*1059 Despite the amendment to section 236.081, we find the rationale of Gindl applicable to the classroom enhancement incentive proviso. Neither the 1995-1996 General Appropriations Act nor the Implementing Bill to the 1995-1996 General Appropriations Act provides a formula for determining the annual allocation of funds from the Florida Education Finance Program. See Ch. 95-429, § 2(150), Laws of Fla.; Ch. 95-430, § 25, Laws of Fla. As a consequence, by default, funds for fiscal year 1995-1996 will be allocated to each school district based on the formula set forth in section 236.081, Florida Statutes (Supp. 1994). The effect of the proviso is only to adjust the formula.
Section 236.081 is not an existing law on the subject of appropriations. Rather, it provides a formula for determining how such funds as may be available should be allocated among the school districts. It remains for the Legislature to appropriate the funds each year. The proviso seeks to modify the statutory formula so as to provide an incentive for the districts to reduce the ratio of non-classroom salaries to classroom salaries.[4] Though few could question the merit of reducing classroom size, some may doubt whether the State should dictate to local school districts how to spend their allocated funds. In any event, it is clear that this is a policy decision which should be debated as a proposed amendment to the distribution formula in section 236.081. As a practical matter, by placing the reallocation in the appropriations act, the Legislature has made this policy determination immune to veto, which is the very practice article III, section 12 is designed to prevent.[5]
We conclude that the Legislature may not enact or amend a law on a subject other than appropriations in an appropriations act simply because the Legislature expresses an intent to do so. That is, the Legislature cannot erect a statutory scheme designed to circumvent this Court's admonition in Brown. To hold otherwise would effectively nullify the single-subject requirement of article III, section 12.[6]
Accordingly, we hold that the challenged proviso violates article III, section 12 of the Florida Constitution and the challenged veto violates article III, section 8(a) of the Florida Constitution. We direct the Secretary of State to expunge the unconstitutional proviso to Specific Appropriation 150 of the 1995-1996 General Appropriations Act and the Governor's unconstitutional veto from the official records of the State. Additionally, we direct the Comptroller to ensure that the expunction of the challenged proviso is reflected in the financial operations of the State. Because we have concluded that the challenged proviso is unconstitutional, the Comptroller need not be detained by this Court's determination that the Governor's veto is unconstitutional. Finally, because we believe the parties to this action will fully comply with the views expressed in this opinion, we withhold the formal issuance of the writ of mandamus at this time. See Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995); Murray v. Lewis, 576 So.2d 264, 267 (Fla. 1990); House of Representatives v. Martinez, 555 So.2d 839, 846 (Fla. 1990).
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The Legislature was permitted to intervene as a respondent.
[2] According to the Governor, the precise amount of the redirected funds cannot be calculated at the present time, but they are estimated to be approximately $127,000,000. At oral argument, the Legislature estimated the maximum redistribution of funds to be $87,000,000.
[3] Article III, section 8(a) states in pertinent part: "The governor may veto any specific appropriation in a general appropriation bill, but may not veto any qualification or restriction without also vetoing the appropriation to which it relates."
[4] By forcefully contending at oral argument that the proviso was designed to pressure school districts to reduce the size of classes, the Legislature acknowledged that the primary purpose of the proviso was something other than the general appropriation of funds to school districts for the operation of schools.
[5] We hasten to point out, however, that there would have been nothing to prevent the Legislature from appropriating additional funds for those school districts which lowered their student-teacher ratio. See Department of Educ. v. School Bd. of Collier County, 394 So.2d 1010 (Fla. 1981). Of course, such an appropriation would have been subject to the Governor's veto.
[6] The Legislature's reliance on Florida Department of Education v. Glasser, 622 So.2d 944 (Fla. 1993), is misplaced. While that case involved a statute with prefatory language which parallels that of section 236.081, that language was not at issue in Glasser nor was it even mentioned in the case. Moreover, the case did not involve a change in the section 236.081 distribution formula.