784 So.2d 404 (2001)
The FLORIDA SENATE et al., Petitioners,
v.
FLORIDA PUBLIC EMPLOYEES COUNCIL 79, AFSCME, Respondent.
State of Florida, ex rel. Robert A. Butterworth, Attorney General, Petitioner,
v.
Florida Public Employees Council 79, AFSCME, Respondent.
Nos. SC01-765, SC01-766.
Supreme Court of Florida.
April 18, 2001.
*405 Barry Richard of Greenberg Traurig, P.A., Tallahassee, FL, for Petitioners in No. SC01-765.
Ben R. Patterson of Patterson & Traynham, Tallahassee, FL, for Respondent in No. SC01-765.
Charles T. Canady, General Counsel, Executive Office of the Governor, Tallahassee, FL, for Honorable Jeb Bush, Governor of the State of Florida, Amicus Curiae.
Johnnie B. Byrd, John Dudley Goodlette, Stacy J. Ritter and John Preston Seiler, Tallahassee, FL, for Former Speakers of the Florida House of Representatives, Amici Curiae.
Joseph Egan, Jr. and Tobe Lev of Egan, Lev & Siwica, P.A., Orlando, FL, for Florida AFL-CIO, Amicus Curiae.
Charles N. D'Asaro, pro se, Bagdad, Florida, and Christine M. Walsh, pro se, Bagdad, FL, Interveners.
Robert A. Butterworth, Attorney General, and Thomas E. Warner, Solicitor General, Office of the Solicitor General, Tallahassee, FL, for Petitioner in No. SC01-766.
Jerry G. Traynham and Ben R. Patterson of Patterson & Traynham, Tallahassee, FL, for Respondent in No. SC01-766.
PER CURIAM.
The petitioners in these consolidated cases ask this Court to issue a writ prohibiting the circuit court from proceeding with a hearing on an order to show cause why the petitioners in case number SC01-765 should not be held in contempt for refusing to obey an order enjoining certain *406 proceedings. The Attorney General also asks the Court to quash the orders issued by the circuit court and dismiss the pending circuit court action. We have jurisdiction. See art. V, § 3(b)(7), Fla. Const.; Moffitt v. Willis, 459 So.2d 1018 (Fla.1984). We grant the petitions as explained herein.

I. FACTS
Florida Public Employees Council 79, AFSCME ("Union") is the statutory bargaining agent for approximately 70,000 Florida Career Service System employees. The statutory employer is the Governor of the State of Florida, Jeb Bush ("Governor"). In February 2001, as the Union and Governor were negotiating a successor collective bargaining agreement to the one that will expire June 30, 2001, the Governor declared a bargaining impasse and the parties utilized the impasse resolution mechanism set forth in section 447.403, Florida Statutes (2000).[1]
The parties presented argument and evidence to a special master. Prior to issuance of the special master's report,[2] the Joint Select Committee on Collective Bargaining ("Select Committee" or "Committee") on March 27, 2001, notified the parties that it had scheduled a public hearing for April 3, 2001, to resolve the impasse. The Union filed suit in circuit court against "the Florida Legislature (the Florida Senate and the Florida House of Representatives); Rodolfo `Rudy' Garcia and Frederick C. Brummer," seeking declaratory and injunctive relief. The complaint alleged that the timing of the hearing violated section 447.403 because it deprived the parties of an opportunity to review the special master's report and negotiate a settlement agreement on their own. The complaint asked the court to do two things: (1) issue a temporary restraining order ("TRO") barring the above named parties from holding the scheduled hearing, and (2) issue an order declaring that the above parties may not intervene in a bargaining dispute until requested to do so pursuant to section 447.403.
The circuit court on April 3 issued a TRO barring the Committee from holding the hearing. As with the Union's complaint, the order was directed to "the Florida Legislature (the Florida Senate and the Florida House of Representatives); Rodolfo `Rudy' Garcia and Frederick C. Brummer." A copy of the TRO was served on the enjoined parties that afternoon. The Committee nevertheless held the hearing later that day.
The Union on April 9 moved the circuit court to enforce the temporary restraining order and issue an order to show cause why the enjoined parties should not be held in contempt. The court on April 10 issued an order directing the enjoined parties to appear before the court at 1 p.m., Thursday, April 19, to show cause why they should not be held in indirect criminal contempt. The court on the same day issued an order appointing the State Attorney of the Second Judicial Circuit as counsel and directing him to prosecute the contempt order at the hearing. The Legislature *407 on Thursday, April 12, filed a petition in this Court seeking a writ of prohibition barring the circuit court from holding the contempt hearing.[3] The Florida Attorney General on the same day filed a petition in this Court seeking a writ of prohibition quashing the trial court's orders and dismissing the action. This Court on April 12 issued an order directing that responses be filed by 5 p.m., Monday, April 16, and that a reply be filed by 12 p.m., Tuesday, April 17.

II. THE APPLICABLE LAW

A. The Impasse Resolution Statute

Chapter 447, part II, Florida Statutes (2000), addresses collective bargaining practices for public employees. Section 447.403 sets forth a mechanism for resolving impasses:
(1) If, after a reasonable period of negotiation concerning the terms and conditions of employment to be incorporated in a collective bargaining agreement, a dispute exists between a public employer and a bargaining agent, an impasse shall be deemed to have occurred when one of the parties so declares in writing to the other party and to the commission. When an impasse occurs, the public employer or the bargaining agent, or both parties acting jointly, may appoint, or secure the appointment of, a mediator to assist in the resolution of the impasse.
(2) If no mediator is appointed, or upon the request of either party, the commission shall appoint, and submit all unresolved issues to, a special master acceptable to both parties. If the parties are unable to agree on the appointment of a special master, the commission shall appoint, in its discretion, a qualified special master. However, if the parties agree in writing to waive the appointment of a special master, the parties may proceed directly to resolution of the impasse by the legislative body pursuant to paragraph (4)(d). Nothing in this section precludes the parties from using the services of a mediator at any time during the conduct of collective bargaining.
(3) The special master shall hold hearings in order to define the area or areas of dispute, to determine facts relating to the dispute, and to render a decision on any and all unresolved contract issues.... Within 15 calendar days after the close of the final hearing, the special master shall transmit his or her recommended decision to the commission and the representatives of both parties by registered mail, return receipt requested. Such recommended decision shall be discussed by the parties, and each recommendation of the special master shall be deemed approved by both parties unless specifically rejected by either party by written notice filed with the commission within 20 calendar days after the date the party received the special master's recommended decision. The written notice shall include a statement of the cause for each rejection and shall be served upon the other party.
§ 447.403, Fla. Stat. (2000).
The statute further sets forth a procedure to be implemented in the event that either party rejects the special master's decision:
(4) In the event that either the public employer or the employee organization does not accept, in whole or in part, the *408 recommended decision of the special master:
(a) The chief executive officer of the governmental entity involved shall, within 10 days after rejection of a recommendation of the special master, submit to the legislative body of the governmental entity involved a copy of the findings of fact and recommended decision of the special master, together with the chief executive officer's recommendations for settling the disputed impasse issues. The chief executive officer shall also transmit his or her recommendations to the employee organization....
(b) The employee organization shall submit its recommendation for settling the disputed impasse issues to such legislative body and to the chief executive officer;
(c) The legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the rejected recommendations of the special master;
(d) Thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved, to resolve all disputed impasse issues....
§ 447.403, Fla. Stat. (2000).

B. Separation of Powers

Article II, section 3, Florida Constitution, provides that state government in Florida shall be divided into three separate branches:
Branches of government.The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
Art. II, § 3, Fla. Const.
The Court in Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla.1991), delineated two precepts underlying the separation of powers doctrine:
The doctrine encompasses two fundamental prohibitions. The first is that no branch may encroach upon the powers of another. The second is that no branch may delegate to another branch its constitutionally assigned power.
Chiles, 589 So.2d at 264 (citation omitted). The first precept is implicated in the present case.
Where the Legislature is concerned, it is only the final product of the legislative process that is subject to judicial review:
It is the final product of the legislature that is subject to review by the court, not the internal procedures. As we stated in General Motors Acceptance Corp. v. State, 152 Fla. 297, 303, 11 So.2d 482, 485 (1943), the legislature has the power to enact measures, while the judiciary is restricted to the construction or interpretation thereof.
Moffitt v. Willis, 459 So.2d 1018, 1021 (Fla. 1984). In the final analysis, "[t]he preservation of the inherent powers of the three branches of government, free of encroachment or infringement by one upon the other, is essential to the effective operation of our constitutional system of government." In re Advisory Opinion to the Governor, 276 So.2d 25, 30 (Fla.1973).

III. THE PRESENT CASE
In the present case, as noted above, the circuit court below entered a temporary restraining order barring the petitioners from convening a scheduled public hearing. The petitioners contend *409 that the circuit court was without authority to enjoin the public hearing. We agree.
The petitioners, who were the defendants below, were sued in their legislative roles. The complaint alleged that the defendants (petitioners here) were the Florida House of Representatives and the Florida Senate and their Joint Select Committee on Collective Bargaining that is co-chaired by Senator Rodolfo "Rudy" Garcia and Representative Frederick C. Brummer. As the Court in Moffitt v. Willis, 459 So.2d 1018, 1021 (Fla.1984), noted, Florida courts have full authority to review the final product of the legislative process, but they are without authority to review the internal workings of that body.
In the present case, the circuit court did what it had no authority to do: It issued an order contravening the internal workings of the Legislature. The letter from the Select Committee announcing the April 3 public hearing stated the topic of the hearing: "The public hearing is regarding the issues at impasse between the State of Florida and all parties pursuant to ss. 216.163(4) and 447.403, F.S." Although section 447.403 relates to the collective bargaining process, section 216.163(4), Florida Statutes (2000), does not; it addresses budgeting issues for agencies and provides criteria for incentive and disincentive funding.[4] Thus, an injunction for such a hearing would be inappropriate.
Further, the circuit court's temporary restraining order enjoined the entire Legislature and several of its officers. As noted above, the order was directed to the following parties: "the Florida Legislature (the Florida Senate and the Florida House of Representatives); Rodolfo `Rudy' Garcia and Frederick C. Brummer." The breadth of the temporary restraining order thus exceeded the statutory requirements of section 447.403 and impinged on the sovereignty of a co-equal branch of government.

IV. CONCLUSION
As a rule, this Court is reluctant to grant a petition for the extraordinary writ of prohibition but we are constrained to do so in the present case for several reasons. First, the Legislature is currently in session and is working to complete the state's business on schedule. A number of highly important issues remain to be resolved by that body. Second, the circuit court's temporary restraining order was directed broadly to the Legislature itself, a constitutional branch of state government, and several of its officers. This is an extraordinary situation that is unlikely to recur. Dispatch is at a premium so that the Legislature may complete the state's business promptly.
Based on the foregoing, we grant the petitions. However, because we are confident that the circuit court will comply with the dictates of this opinion, we withhold formal issuance of the writ of prohibition. Our decision is without prejudice to the parties pursuing any civil or administrative actions or remedies thereto or defenses thereto provided by law relating to collective bargaining rights.
No motion for rehearing will be allowed.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., concurs in result only.
QUINCE, J., concurs in part and dissents in part with an opinion.
*410 QUINCE, J., concurring in part and dissenting in part.
I agree with the majority that the temporary restraining order (TRO), to the extent that it enjoins the Legislature from holding meetings, exceeds the scope of the circuit court's jurisdiction and must be quashed. However, to the extent that the TRO enjoins the "legislative body or a duly authorized committee thereof as described in section 447.403, Florida Statutes (2000), I would find prohibition improper and would not quash the restraining order because questions remain concerning the duties, responsibilities and capacity of this "legislative body" or "duly authorized committee thereof."
The parties who originally invoked the jurisdiction of the circuit court, the union serving Florida's 70,000 career service employees, did so in a declaratory judgment action concerning their rights under the collective bargaining statute. The circuit courts of this State have jurisdiction to hear complaints requesting declaratory relief. See § 86.011, Fla. Stat. (2000). The union asked the circuit court to declare its rights under section 447.403; more specifically, it asked the court to declare that it had a certain period of time (twenty days) under section 447.403(3) to reject the special master's report, or any part thereof, prior to the "legislative body" or "duly authorized committee thereof" holding a hearing to resolve the impasse between the union and the workers' employer and to address the parties' rejection of the special master's report. In this case, the "duly authorized committee" had scheduled the hearing prior to receipt of the special master's report. Therefore, the union asked the court to temporarily enjoin the "duly authorized committee" from convening the meeting.
The TRO issued by the trial judge does in fact enjoin the joint special committee, which is the duly authorized committee pursuant to the statutory scheme, from holding a meeting which the trial judge obviously considered to be in violation of section 447.403(3). Although we know that the courts cannot enjoin the Legislature from performing its constitutional legislative functions, the real question that is presented in this case is whether the "duly authorized committee" is acting in a legislative capacity when it acts pursuant to the provisions of the collective bargaining statute.
If the committee is acting in a legislative capacity then injunctive relief will not lie under the separation of powers doctrine. See generally Chiles v. Children A, B, C, D, E & F, 589 So.2d 260 (Fla.1991); Idaho State AFL-CIO v. Leroy, 110 Idaho 691, 718 P.2d 1129 (1986). However, if the committee is acting in other than a legislative capacity, even though comprised of legislators, the answer is not so clear-cut. See, e.g., Bridge & Tunnel Officers Benevolent Ass'n, Inc. v. Ravitch, 105 Misc.2d 924, 430 N.Y.S.2d 206 (N.Y.Sup.Ct.1980).
Another aspect overlooked by the petitioners is that this case involves not only the separation of powers[5] issue but also the constitutional right of public employees to collectively bargain.[6] Also implicated are the respective parties' rights and responsibilities under section 447.403, a section of the statutory provisions implementing this constitutional right. These issues have never been fully explored before the trial court, first because the union requested emergency relief from the trial court in the form of an ex parte temporary restraining order, and second because none of the parties so restrained requested relief *411 from the order in the form of a motion to dissolve, request for rehearing, or appeal. See generally Curtis v. Albritton, 101 Fla. 853, 132 So. 677 (1931); Department of Health & Rehab. Servs. v. Johnson, 504 So.2d 423 (Fla. 5th DCA 1987). Although the circuit court may have acted precipitously in issuing this broadly worded injunction, I fear that this Court by issuance of the writ of prohibition may have prohibited the circuit court from exercising appropriate authority to enforce section 447.403, especially insofar as the action in the trial court alleges a violation of respondent's constitutional right to collectively bargain.
For these reasons, I would grant prohibition in part and quash the trial court's order to show cause to the extent that it requires the appearance of members of the Legislature in its legislative capacity. Otherwise I would remand to the trial court to proceed to address those issues that are necessary to a complete resolution of the complaint for declaratory relief.
NOTES
[1] Under the statutory procedure, the parties must submit argument and evidence to a special master, who issues a report. The parties then have twenty days to consider the report, and if either party rejects the report during that period the action proceeds directly to the appropriate "legislative body," which conducts a public hearing, hears argument of the parties on the disputed issues, and resolves the dispute. The "legislative body" in the present case is the Joint Select Committee on Collective Bargaining, co-chaired by Senator Rodolfo Garcia and Representative Frederick C. Brummer.
[2] According to the filings, the report was issued March 31 but was not received by the Union until 4 p.m., April 3.
[3] The petition was filed by the Florida Senate, the Florida House of Representatives, Senate President John McKay, Speaker of the House Tom Feeney, Senator Garcia, and Representative Brummer.
[4] Prior to 1994, section 216.163(4) addressed the Governor's duties in collective bargaining impasses. See § 216.163(4), Fla. Stat. (1993). This former section was redesignated section 216.163(6) in 1994. See Ch. 94-249, § 11, Laws of Fla.
[5] See art. II, § 3, Fla. Const.
[6] See art. I, § 6, Fla. Const.