# Supreme Court of Florida

_____

No. SC14-69
_____

**FLORIDA DEPARTMENT OF TRANSPORTATION,**
Petitioner,

vs.

**DORTHY SCHWEFRINGHAUS, et al.,**
Respondents.

[April 7, 2016]

QUINCE, J.

This case is before the Court for review of the decision of the Second District Court of Appeal in Department of Transportation v. CSX Transportation, Inc., 128 So. 3d 209 (Fla. 2d DCA 2013). In its decision, the district court ruled upon the following questions, which the court certified to be of great public importance:

> IS DOT BOUND BY A RAILROAD CROSSING AGREEMENT UNDER WHICH IT RECEIVED A REVOCABLE LICENSE TO USE LAND AS RIGHT–OF–WAY IF THE SOLE CONSIDERATION FOR THE LICENSE WAS AN AGREEMENT TO INDEMNIFY THE RAILROAD FOR LOSSES ARISING OUT OF DOT'S ACTIVITY ON THE LAND?

IF SO, IS DOT'S LIABILITY UNDER THE CROSSING AGREEMENT LIMITED BY SECTION 768.28(5), FLORIDA STATUTES (2002)?

Id. at 215. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we approve the decision of the Second District, answer the first certified question in the affirmative, and answer the second in the negative.

## FACTS

The Florida Department of Transportation (DOT) appealed a judgment awarding $502,462.22 to CSX Transportation, Inc. (CSX) as indemnity for the amount of a settlement and related attorneys' fees paid by CSX to resolve a negligence action arising from an accident at a railroad crossing. CSX Transp., Inc., 128 So. 3d at 210. CSX requested indemnification under a 1936 crossing agreement between Seaboard Air Line Railway Company (Seaboard)— predecessor to CSX—and the State Road Department—the DOT's predecessor. Id. at 211. The agreement allowed the State Road Department, as a licensee, to construct and maintain a road that crossed over railroad tracks owned at the time by Seaboard. Id. However, the agreement also contained an indemnity clause, which read, "The [State Road Department] will indemnify and save harmless [Seaboard Air Line Railway Company] from and against all loss, damage or expense arising or growing out of the construction, condition, maintenance, alteration or removal of the highway hereinabove described." Id. at 216-17.

- 2 -

The facts that prompted the filing of suit are as follows:

On October, 29, 2002, [Robert and Dorthy Schwefringhaus[1]] were riding eastbound in their car on State Road 52 near Giddens Road. A truck, heading westbound, went over some railroad tracks owned by CSX. The crossing was allegedly in poor maintenance, and a trailer behind the truck disconnected. The trailer and its load of lumber struck the couple's car, killing [Mr. Schwefringhaus] and badly injuring [his] wife. State Road 52 is the successor number for State Road 210 [the subject of the 1936 crossing agreement]. . . . By 2002, this road was a major highway, connecting I-75 on the east to the newly constructed Suncoast Parkway on the west.

[Ms. Schwefringhaus], on her own behalf and as personal representative of the estate of her husband, filed suit against CSX in 2004. The truck driver who dropped the trailer was apparently never identified and was not a party to the lawsuit. CSX brought DOT into this action as a third-party defendant in 2008.[2] Ultimately, following a settlement with the plaintiffs, the trial court entered this judgment requiring DOT to indemnify CSX in the amount of $125,000 for the settlement of this lawsuit and $377,462.22 for the expenses arising from its failure to defend the suit.

Id. at 211-12 (footnotes added). On appeal to the Second District, the DOT argued the indemnity clause was invalid because the State Road Department had no legal authority to enter into the agreement. Id. at 210-11. In the alternative, the DOT argued that pursuant to section 768.28(5), Florida Statutes (2002), its liability for

---

1. There is some confusion in the record as to the proper spelling of Ms. Schwefringhaus' first name. Her deposition reveals that the correct spelling is "Dorthy."

2. The trial court granted CSX's motion to bifurcate the liability and damages phases of the third-party suit and granted, in part, CSX's Motion for Partial Summary Judgment against the DOT.

breach of the crossing agreement must be limited to $200,000, with CSX seeking payment of any additional amount from the Florida Legislature.  Id. at 211.

The Second District rejected the DOT's argument that the State Road Department had no authority to agree to indemnification, finding this case similar enough to two cases[3] in which this Court enforced the indemnity agreements to warrant the same result.  Id. at 212.  The district court also found that the indemnity clause was the only consideration the State provided to CSX for the agreement.  Id.  Accordingly, the court observed that finding the indemnity agreement unenforceable would void the entire crossing agreement, entitling CSX "to prevent any vehicles from crossing its tracks, effectively closing State Road 52" and potentially many other roads where similar, standardized crossing agreements containing this same language were used.  Id. at 212-13.

The Second District also relied on estoppel principles to find the indemnity clause enforceable, id. at 214 n.5, and suggested that because CSX did not require a lump sum payment at the inception of the contract or annual payments during its term, the indemnity payment was simply the DOT's payment for a license "that

---

3. Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 463, 473-74 (Fla. 2005) (enforcing crossing agreement between railroad company and a municipal agency, although emphasizing that this Court was not resolving the issue as to a state subdivision or agency); Russell v. Martin, 88 So. 2d 315 (Fla. 1956) (enforcing private crossing agreement between railroad company and a private property owner).

apparently was free of charge for its first sixty-five years." Id. at 213. While the Second District recognized "that Florida's Constitution states that '[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law,' " it did not read this provision as prohibiting the trial court from entering a monetary judgment requiring the DOT to indemnify CSX. Id. at 214.

Regarding the DOT's argument that the judgment must be limited to $200,000, the district court found that statutes, such as section 768.28, that limit liability as part of the Legislature's partial waiver of sovereign immunity apply "only to judgments recovering damages for tort, not to judgments recovering damages under legal theories that may be analogous to torts." Id. This case involved the latter because the district court found the DOT liable based on an express written contract. Id. Recognizing that its decision could broadly impact similar long-standing agreements throughout the state and affect commerce, the Second District certified the following two questions of great public importance:

> IS DOT BOUND BY A RAILROAD CROSSING AGREEMENT UNDER WHICH IT RECEIVED A REVOCABLE LICENSE TO USE LAND AS RIGHT–OF–WAY IF THE SOLE CONSIDERATION FOR THE LICENSE WAS AN AGREEMENT TO INDEMNIFY THE RAILROAD FOR LOSSES ARISING OUT OF DOT'S ACTIVITY ON THE LAND?
>
> IF SO, IS DOT'S LIABILITY UNDER THE CROSSING AGREEMENT LIMITED BY SECTION 768.28(5), FLORIDA STATUTES (2002)?

Id. at 215. The DOT appealed, and the Florida Association of County Attorneys filed an amicus brief in support of the DOT's position. The Association of American Railroads filed an amicus brief in support of Respondent CSX, and the Florida Justice Reform Institute, the Florida Chamber of Commerce, Inc., and Associated Industries of Florida, Inc. jointly filed an amicus brief, also supporting Respondent CSX.

## ANALYSIS

We have previously held that the defense of sovereign immunity will not protect the State from a cause of action arising from its breach of an express, written contract into which it had statutory authority to enter. Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5-6 (Fla. 1984). Both parties agree that this principle applies here, but they disagree as to how it applies. Respondent CSX argues that because the State Road Department had statutory authority to enter into the crossing agreement, Pan-Am prohibits the DOT from relying on sovereign immunity to bar suit for its breach of the indemnity provision within that agreement. The DOT asserts that Pan-Am's requirement of statutory authority is not met in this case because although the State Road Department had authority to enter into the crossing agreement, it did not have authority to agree to the indemnity clause. Therefore, according to the DOT, the indemnity provision is unenforceable, and Pan-Am's waiver of sovereign immunity does not apply. We

- 6 -

agree with Respondent CSX and find that under <u>Pan-Am</u>, the DOT cannot use sovereign immunity where the DOT breached a provision of a statutorily authorized crossing agreement.[4]

In <u>Pan-Am</u>, the Florida Department of Corrections breached its contract with Pan-Am Tobacco Corporation by terminating the agreement early and without using the required termination procedures within the contract. <u>Id.</u> at 4-5. We noted that the Legislature, in section 768.28, Florida Statutes, waived sovereign immunity in tort law, but not in contracts. <u>Id.</u> at 5. However, we found that the Legislature's grant of power to the State to enter into contracts indicates the Legislature's intent that those contracts be binding and mutually enforceable. <u>Id.</u> Thus, we held that "where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." <u>Id.</u> The question here is whether <u>Pan-Am</u> requires the State Road Department to have had statutory authority to enter into the indemnity clause itself or whether statutory authority to enter into the <u>crossing agreement</u> is sufficient.

---

4. This case involves a pure question of law and a trial court's ruling on a motion for summary judgment—both of which are subject to de novo review. <u>Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.</u>, 127 So. 3d 1258, 1268 (Fla. 2013).

The DOT argues that the indemnity clause requires separate statutory authorization because it is essentially a waiver of sovereign immunity, which only the Legislature has the power to waive. See Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471-72 (Fla. 2005) ("Only the Legislature has authority to enact a general law that waives the state's sovereign immunity."); Art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."). However, we addressed this argument in Pan-Am, wherein we found an implied waiver of sovereign immunity for contract claims, despite the nonexistence of an express legislative waiver in that context. See Cty. of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1050 (Fla. 1997); State v. Family Bank of Hallandale, 623 So. 2d 474, 479 (Fla. 1993). We stated, "Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties." Pan-Am, 471 So. 2d at 5. Otherwise, the legislative authorization to undertake such activities would be void and meaningless. Id. Thus, when the State is statutorily authorized to enter into a contract, that authority includes the obligations necessary to fulfill the terms of that contract.

Our decision in <u>American Home</u> also reinforces this conclusion. 908 So. 2d at 463. In that case, a municipal agency (KUA) entered into a crossing agreement with CSX, in which KUA agreed to indemnify CSX and others against certain losses. <u>Id.</u> at 462-63. We found that the indemnification provision was not controlled by the breach-of-contract principles in <u>Pan-Am</u> "because that case addressed the contractual liabilities of the state, while municipalities historically have possessed liability for their contracts." <u>Id.</u> at 474.[5] We determined that KUA had authority to enter into contracts for municipal services—including the crossing agreement—and that as consideration for the license to use CSX's property and in recognition of the increased risks associated with such use, KUA agreed to indemnify CSX against any loss. <u>Id.</u> at 476. Because the indemnification clause was part and parcel of the "fairly authorized" crossing agreement in that case, we found the clause to be binding and enforceable. <u>Id.</u> Accordingly, we concluded that a municipal agency like KUA has inherent authority to "enter into an indemnification agreement as part of a contract with a private party and may not invoke sovereign immunity to defeat its obligations under the contract." <u>Id.</u>

---

5. The DOT argues that <u>American Home</u> is distinguishable from the instant case because that case involved a municipality, not a state agency. However, that distinction was only relevant to determine whether <u>Pan-Am</u> applied, not the issue here—which is whether the application of <u>Pan-Am</u> requires the crossing agreement, generally, or the indemnity clause, specifically, to be statutorily authorized.

Although we determined that Pan-Am did not apply, our decision in American Home still required that we discuss KUA's "statutory authority"—the same element under Pan-Am that is relevant to the instant case. Our finding that KUA had authority to enter into the indemnity clause was based on that clause being "part and parcel" of the "fairly authorized" crossing agreement, not based on the clause itself being fairly authorized. Just as in American Home, the crossing agreement here was statutorily authorized, and the indemnity provision therein was "part and parcel" of that statutorily authorized crossing agreement. As such, under Pan-Am, the DOT may not invoke sovereign immunity to defeat its performance obligations under the crossing agreement.

The DOT also asserts that the indemnity provision is unenforceable because it improperly authorizes expenditures from the state treasury, which only the Legislature can do. Am. Home, 908 So. 2d at 474 ("The state may not employ state funds unless such use of funds is made pursuant to an appropriation by the Legislature."); Art. VII, § 1(c), Fla. Const. ("No money shall be drawn from the treasury except in pursuance of appropriation made by law."). However, our holding in Pan-Am addresses this argument as well because the State is authorized to expend funds necessary to perform its obligations under the contract. See Pan-Am, 471 So. 2d at 5. In this case, the crossing agreement necessitated the expenditure of funds for the DOT to construct and maintain the road it was

licensed to build. The indemnity provision was merely an additional performance obligation that required the DOT to expend funds. The authorization to fulfill one's performance under a contract does not disappear merely because the performance obligation happens to implicate tort law. Accordingly, we find that the DOT is bound by the crossing agreement—including the indemnity clause—and answer the first certified question in the affirmative.[6]

The second certified question asks if the DOT's liability under the crossing agreement is limited by section 768.28(5), Florida Statutes (2002). CSX Transp., Inc., 128 So. 3d at 215. However, we have previously held that the liability limits of section 768.28 do not apply to non-tort claims. See Am. Home, 908 So. 2d at 474 (concluding that section 768.28 was not applicable where the indemnity provision was based on a contract); Provident Mgmt. Corp. v. City of Treasure Island, 796 So. 2d 481, 486 (Fla. 2001) (refusing to apply section 768.28 to restrict the award of damages against the State for the erroneous issuance of a temporary injunction because "that statute applies only when the governmental entity is being sued in tort"). This holding is supported by the principle that "statutes purporting

_____

6. In the Second District's opinion below, the majority and the dissent phrase this certified question differently based on characterizing the indemnity provision as either the sole consideration or instead as partial consideration for the crossing agreement. We note that neither characterization affects our holding as to this certified question.

to waive sovereign immunity must be clear and unequivocal." Spangler v. Fla. State Tpk. Auth., 106 So. 2d 421, 424 (Fla. 1958). Waiver cannot be found by inference or implication, and statutes waiving sovereign immunity must be strictly construed. Id. Here, the plain language of this subsection indicates that it applies only to tort claims. § 768.28(5), Fla. Stat. (explaining that state agencies and subdivisions "shall be liable for tort claims in the same manner and to the same extent as a private individual," but placing limits on that liability) (emphasis added). Even section 768.28(1), which establishes the limited waiver of sovereign immunity, states that it only applies to causes of action seeking "to recover damages in tort." Am. Home, 908 So. 2d at 474. We hereby reaffirm that section 768.28(5) applies only to tort actions, and we answer the second certified question in the negative.

## CONCLUSION

Based on the foregoing, we find that the breach-of-contract principles in Pan-Am prohibit the DOT from using sovereign immunity to avoid suit for its breach of the crossing agreement. We also find that DOT is bound by the indemnity provision as a part of the statutorily authorized crossing agreement, and that the limits of liability in section 768.28(5) do not apply. We affirm the Second District's opinion in Department of Transportation v. CSX Transportation, Inc.,

128 So. 3d 209 (Fla. 2d DCA 2013), and remand for disposition in accordance with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

Second District - Case No. 2D12-1097

(Pasco County)

Gerald B. Curington, General Counsel, and Marc Allen Peoples, Assistant General Counsel, Florida Department of Transportation, Tallahassee, Florida,

for Petitioner

Daniel John Fleming of Melkus, Fleming & Gutierrez, P.L., Tampa, Florida; and Dan Himmelfarb of Mayer Brown LLP, Washington, District of Columbia,

for Respondent CSX Transportation, Inc.

Stephen Michael Durden, Jacksonville, Florida,

for Amicus Curiae Florida Association of County Attorneys

Peter D. Webster of Carlton Fields Jorden Burt, P.A., Tallahassee, Florida; Wendy Frank Lumish of Carlton Fields Jorden Burt, P.A., Miami, Florida; and Daniel Saphire, Assistant General Counsel, Association of American Railroads, Washington, District of Columbia,

for Amicus Curiae Association of American Railroads

Stephen H. Grimes and Matthew Harrison Mears of Holland & Knight LLP, Tallahassee, Florida; and William Wells Large, Florida Justice Reform Institute, Tallahassee, Florida,

for Amici Curiae Florida Justice Reform Institute, Florida Chamber of Commerce, and Associated Industries of Florida