Wolf, J.
The petitioners in these consolidated cases, the President of the Florida Senate and the Speaker of the Florida House of Representatives (the Legislature), seek a writ of prohibition finding that the circuit court lacks jurisdiction to adjudicate two class action complaints filed against them by several of the respondents, who are university students and donors, that alleged the Legislature has failed to match donations made to universities as required by statute. The remaining defendants to that complaint, Governor Rick Scott, Florida State Board of Education, Florida State Board of Governors of the State University System, and the Commissioner on Education, filed a response agreeing this court should issue the writ of prohibition for the reasons stated in the petition.
We grant the petition in part. The circuit court does not have jurisdiction to declare that the Legislature's failure to appropriate funds constitutes a violation of the single subject requirement pursuant to article III, section 12 of the Florida Constitution, as alleged in Count 1 of the complaint. The court also lacks the jurisdiction to grant one of the remedies sought in the complaint-an injunction prohibiting the Legislature from adopting future appropriations bills that do not contain specific appropriations for matching donations-because doing so would violate the separation of powers doctrine as set forth in article II, section 3 and article V, section 14(d) of the Florida Constitution. Thus, we grant the petition as to Count 1 and the injunctive relief sought by respondents.
We deny the petition as to Count 2, which alleges breach of contract, and Count 4, which seeks declaratory relief.[1]
*782 While we share many of the misgivings raised by counsel for the Legislature regarding the sufficiency of the allegations as to these counts and whether the circuit court will ultimately be able to fashion a remedy that is not violative of separation of powers principles, we cannot determine at this stage of the litigation that the circuit court lacks jurisdiction to adjudicate these claims.
FACTS
Respondents/plaintiffs,[2] two donors to Florida State University and two recent students at the University of Florida, filed class action complaints against the Legislature and other officials and subdivisions of the State of Florida for failing to match private donations to colleges and universities with public funds as required by the following four matching statutes: sections 1011.85, 1011.32, 1011.94, and 1013.79, Florida Statutes (matching statutes). Respondents argue that pursuant to these statutes, when the donors made their donations, they entered into gift agreements with the universities that constituted contracts. Due to a matching backlog of hundreds of millions of dollars, each matching statute was amended in 2011 with the following language:
Effective July 1, 2011, state matching funds are temporarily suspended for donations received for this program on or after June 30, 2011. Existing eligible donations remain eligible for future matching funds. The program may be restarted after $200 million of the backlog for programs under [the four matching statutes] have been matched.
§§ 1011.85(13), 1011.32(13), 1011.94(8), 1013.79(12), Fla. Stat.
Respondents' complaints asserted five counts: (1) violation of article III, section 12 of the Florida Constitution's requirement that general appropriations actions address no other subject; (2) breach of contract; (3) violation of article IX, section 1(a) of the Florida Constitution's requirement for the adequate provision of higher education; (4) declaratory relief; and (5) a writ of mandamus compelling the Department of Education, the State Board of Education, and the Commissioner of Education to request matching funds. They sought relief that included an injunction prohibiting the Legislature from enacting appropriations bills that do not provide matching funds, a declaratory judgment, a writ of mandamus against the Department of Education, the State Board of Education, and the Commissioner of Education, or alternatively, any necessary equitable relief.
The petitioners moved to dismiss the complaint. At a hearing on petitioners' motions to dismiss, the circuit court ruled that respondents' complaints adequately pleaded four of their five causes of action.
The trial court ruled as follows:
Count 1 alleges a violation of the Florida Constitution's requirement that laws on appropriations address no other subject. That provision is found in article III, section 12 of the Florida Constitution. Both complaints allege that by not appropriating money, the Legislature is changing the funding formula in the matching statutes. Based on the language in City of North Miami v. Florida Defenders of the Environment , 481 So.2d 1196 (Fla. 1985), the court finds Count 1 states a cause of action and *783 denies the motions to dismiss as to that count.
Count 2 alleges breach of contract. The allegation in paragraph 211 of their complaint is that Donor Plaintiffs entered into Gift Agreements with the Florida State University and the Florida State University Foundation for each $100,000 donation. Defendants argue that this claim fails because, even if the agreements are contracts, Defendants are not parties. Each Gift Agreement is attached to the complaint, signed by the Donor Plaintiffs and the president of Florida State University, the president of Florida State University Foundation, and other high-ranking State University Officials. Plaintiffs argue that each statute authorized Florida's colleges and universities to enter into such agreements to bind the State to match. Alumni Plaintiffs are third-party beneficiaries of those contracts. Each college and university is a creature of the State serving a public purpose within the confines of Florida law. The allegations of Count 2 state a claim for breach of contract. The motions to dismiss Count 2 are denied.
....
Count 4 is for declaratory relief. The court concludes it states a cause of action as alleged.
As previously noted, the court dismissed Count 3, and that is not addressed in this proceeding. Count 5 is not directed to the Legislature and therefore does not need to be further addressed in this opinion.
ANALYSIS
"In Florida, the courts have consistently determined, in accord with the historical understanding and background of the writ of prohibition, that it is meant to be very narrow in scope ...." English v. McCrary , 348 So.2d 293, 296 (Fla. 1977). "Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction." Id.
The courts, however, have found that issuance of a writ of prohibition is appropriate where there is an improper intrusion by the courts into the internal processes of the Legislature, or into the power of the Legislature to fix appropriations. Fla. Senate v. Fla. Public Emps. Council 79, AFSCME , 784 So.2d 404 (Fla. 2001). See also Chiles v. Children A, B, C, D, E, & F , 589 So.2d 260, 267 (Fla. 1991).
We will now address whether the injunctive relief sought by respondents and Counts 1, 2, and 4 violate the separation of powers doctrine, thereby depriving the circuit court of jurisdiction to address these claims.
Injunctive Relief
In their complaints, respondents requested an injunction prohibiting the Legislature from adopting future appropriations bills that do not appropriate matching funds.
Article II, section 3 of the Florida Constitution states:
The powers of state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any power appertaining to either of the other branches unless expressly provided herein.
Pursuant to this provision, the doctrine of separation of powers has been strictly construed in Florida. "The Florida Constitution imposes a strict, explicit and textual separation of powers requirement ...." Barati v. State , 198 So.3d 69, 83 (Fla. 1st DCA 2016). "It would be hard to compose a more demanding requirement in organic law" than Florida's separation of powers. Id. Thus, the supreme court " 'has traditionally applied a strict separation *784 of powers doctrine,' " and described the separation of powers as the "cornerstone of American democracy." Bush v. Schiavo , 885 So.2d 321, 329 (Fla. 2004) (quoting State v. Cotton , 769 So.2d 345, 353 (Fla. 2000) ).
Article III, sections 8, 12, and 19 of the Florida Constitution specifically give the power of appropriation to the legislative branch. Article V, section 14(d) of the Florida Constitution makes it clear, "The judiciary shall have no power to fix appropriations."
"The constitution specifically provides for the legislature alone to have the power to appropriate state funds." Children , 589 So.2d at 267. "The Florida Constitution vests the 'power of the purse' in the Legislature ...." Graham v. Haridopolos , 75 So.3d 315, 318 (Fla. 1st DCA 2011). The "quintessential legislative power" to appropriate funds is "exclusive and plenary" and has resided in the Legislature alone for 179 years. Id. at 318, 320 ; see also State v. Fla. Police Benev. Ass'n , 613 So.2d 415, 418 (Fla. 1992) ("Under the Florida Constitution, exclusive control over public funds rests solely with the legislature."). "Under any working system of government, one of the branches must be able to exercise the power of the purse, and in our system it is the legislature, as representative of the people and maker of laws, including laws pertaining to appropriations, to whom that power is constitutionally assigned." Children , 589 So.2d at 267. "More importantly, only the legislature, as the voice of the people, may determine and weigh the multitude of needs and fiscal priorities of the State of Florida." Id. It alone may decide "how, when, and for what purpose the public funds shall be applied." Graham v. Haridopolos , 108 So.3d 597, 603 (Fla. 2013) (quoting Republican Party of Fla. v. Smith , 638 So.2d 26, 28 (Fla. 1994) ).
An order that prohibits future legislative action-here, the adoption of a state budget-offends the constitutional separation of powers no less than one that compels legislative action. See Fla. Pub. Emps. Council 79 , 784 So.2d at 408-09 (holding that a trial court had no authority to prohibit a legislative hearing, an inherent part of the legislative process); id. at 410 (Quince, J., concurring in part) (noting that "courts cannot enjoin the Legislature from performing its constitutional legislative functions"); Serrano v. Priest , 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929, 941 (1976) (holding that courts may not order a legislature "to enact or not to enact ... specific legislation"). An injunction that freezes the appropriations process in order to pressure the Legislature to make appropriations under the matching statutes is a direct interference with the Legislature's constitutional powers.
Further, the proposed injunction would prohibit the performance of a constitutional duty -the adoption of a state budget-and thus violate the Constitution itself. The Legislature has a constitutional duty to make appropriations for the maintenance of the government. Art. VII, § 1(d), Fla. Const. ("Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period."). No branch of government has authority to prohibit compliance with the Constitution.
The message is clear. Courts cannot interfere with the process of another branch of government to perform its constitutional duties. Because it would prohibit the performance of a solemn constitutional duty, the proposed injunction would be illegal. The circuit court is therefore prohibited from granting the injunctive relief requested by the respondents.
*785 Count 1: Violation of article III, section 12 of the Florida Constitution
In Count 1, respondents alleged the failure to match donations violated the constitutional requirement that laws on appropriations address no other subject. Article III, section 12 of the Florida Constitution states, "Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject." The supreme court has interpreted this provision as prohibiting appropriations bills from amending substantive law or altering formulas provided in substantive law. See Brown v. Firestone , 382 So.2d 654, 664 (Fla. 1980) ("[A]n appropriations bill must not change or amend existing law on subjects other than appropriations."); Chiles v. Milligan , 659 So.2d 1055, 1059 (Fla. 1995) (finding appropriations bill proviso that changed the statutory formula for allocating funds to schools violated article III, section 12 ).
Here, respondents argue the four funding statutes established formulas for matching private donations, and the Legislature's failure to include any matching funds in the General Appropriations Acts from 2012-2017 effectively amended the funding statutes on a subject other than appropriations and altered the funding formulas set forth in those statutes.
The trial court found this allegation stated a cause of action pursuant to City of North Miami v. Florida Defenders of the Environment , 481 So.2d 1196, 1196 (Fla. 1985). In that case, an item in the general appropriations act provided for the transfer of $8.5 million from the Conservation and Recreation Lands Trust Fund (CARL) to the Special Acquisition Trust Funds in order to fund the State's purchase of a particular parcel of land. Id. However, this court found the purposes for which CARL funds could be spent and the procedures for selecting those lands to be purchased with CARL funds were proscribed by statute, and the appropriation "disregard[ed] both." Fla. Defs. of the Env't Inc. v. Graham , 462 So.2d 59, 61 (Fla. 1st DCA 1984). The supreme court agreed, finding this appropriation changed and amended existing law on subjects other than appropriations and unlawfully altered a statutory distribution formula. Fla. Defs. of Env't , 481 So.2d at 1196. As such, the appropriation was stricken. Id. Specifically, the court prohibited the transfer of money held in a trust fund for a designated statutory purpose in order to utilize those funds in a manner not authorized by separate substantive law.
The case at hand is distinguishable because here, petitioners are not complaining that a specific appropriation altered a specific substantive law, nor do they allege a change in a statutory formula. Further, there is no allegation that "trust fund" money is being used in a manner not identified by the statute creating the trust fund. Instead, they complain that the Legislature's failure to pass an appropriation somehow violates the single subject rule. However, they provide no authority supporting their argument.
Regardless, by its very nature, this argument violates the separation of powers doctrine, because asking the trial court to find that the Legislature was constitutionally required to appropriate specific funds for a specific purpose is akin to asking the court to dictate appropriations. The judiciary lacks the authority to do so. See Citizens for Strong Sch., Inc. v. Fla. State Bd. of Educ. , 232 So.3d 1163, 1168-71 (Fla. 1st DCA 2017), review granted , SC18-67, 2018 WL 2069405 (Fla. Apr. 30, 2018) ("The judiciary cannot dictate the manner of executing legislative policies or appropriations in any particular way."); Art. V, § 14(d), Fla. Const. ("The judiciary *786 shall have no power to fix appropriations.").
Thus, this count of the complaint violates the separation of powers doctrine, and the trial court lacks jurisdiction to consider it. Haridopolos v. Citizens for Strong Sch., Inc. , 81 So.3d 465, 466 (Fla. 1st DCA 2011) (denying petition for writ of prohibition that alleged a complaint challenging the adequacy of public education violated the separation of powers doctrine); Moffitt v. Willis , 459 So.2d 1018, 1021 (Fla. 1984) (granting writ of prohibition where trial court lacked jurisdiction to rule on a complaint against the Legislature that would have required the court to determine and declare the meaning and application of the Legislature's rules of procedures).
Count 2: Breach of Contract
In Count 2, respondents alleged a breach of contract against all of the petitioners/defendants. Respondents argued the named donors entered into gift agreements with Florida State University, and these agreements were contracts that required "applying for and taking the maximum advantage of all ... matching fund programs." Because the gift agreements were made with reference to the matching statutes, they argue those statutes became part of the contract, and the failure to match the funds violated these contracts.
Respondents stated they "do not seek to recover the donations but rather seek to compel the State to match the donations." Specifically, they requested an injunction against future appropriations bills that do not appropriate matching funds. Alternatively, they sought a declaratory judgment or any necessary equitable relief.
The factual basis for this claim is not entirely clear. Respondents bring this breach of contract claim against "all defendants," but they do not expressly allege that any of the named defendants were parties to the contract. Perhaps they believe that because the gift statutes were incorporated into the contracts, the contracts bound the Legislature to appropriate the funds and the "education" defendants to request the funds (which they alleged in count 5). It is also unclear whether all of these donor agreements would constitute express written contracts. These are factual issues for the trial court to determine.
The remedy of an injunction against future appropriations would violate the separation of powers doctrine, as discussed above. However, merely adjudicating a breach of contract action does not necessarily violate the separation of powers doctrine, nor is it clear that the court lacks jurisdiction to resolve matters such as existence of a contract or who the proper parties were to the contract.
The supreme court has held that sovereign immunity does not apply "to suits on express, written contracts into which the state agency has statutory authority to enter." Pan-Am Tobacco Corp. v. Dep't of Corr. , 471 So.2d 4, 6 (Fla. 1984). An appropriation is not required in order to compel State agencies to pay damages claims, and instead courts have suggested that writs of mandamus may be appropriate. In ContractPoint Florida Parks, LLC v. State , 958 So.2d 1035, 1036 (Fla. 1st DCA 2007), approved and remanded sub nom . ContractPoint Florida Parks, LLC , 986 So.2d 1260 (Fla. 2008), a party brought a breach of contract action against the Department of Environmental Protection (DEP), and the court entered a monetary judgment against DEP. However, DEP refused to pay the judgment, asserting payment was barred by section 11.066(3), which states "[n]either the state nor any of its agencies shall pay or be required to pay monetary damages under the judgment *787 of any court except pursuant to an appropriation made by law." Id. The prevailing party then filed a petition for writ of mandamus seeking to compel Florida's Chief Financial Officer to pay the damage award. Id. The trial court denied the petition, finding section 11.066(3) barred payment. This court reversed, finding section 11.066(3) did not pertain to contract actions. Id. at 1038.
The supreme court affirmed, finding section 11.066 was intended to apply only to claims based on the exercise of the State's police power, and to apply it to breach of contract cases would render governmental contracts illusory. ContractPoint Fla. Parks, LLC , 986 So.2d at 1271-72. The supreme court suggested that the trial court "may consider issuance of a writ of mandamus on remand, in the event the DEP persists in its refusal to pay this judgment." Id. at 1272.
Similarly in Department of Transportation v. CSX Transportation, Inc. , 128 So.3d 209, 210 (Fla. 2d DCA 2013), approved sub nom . Florida Department of Transportation v. Schwefringhaus , 188 So.3d 840 (Fla. 2016), the Second District found the Department of Transportation could not invoke sovereign immunity to avoid its contractual obligation to indemnify CSX after a railway accident and thus, the trial court had the authority to enter a money judgment against DOT. The Second District acknowledged that article VII, section 1(c) of the Florida Constitution states that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law." Id. at 214. However, the court did "not read this provision to prevent the trial court from having the power to enter a money judgment." Id. "At most, by writ of mandamus, a court might require an agency to take the steps necessary to pay the judgment in an orderly fashion." Id. (citing ContractPoint Fla. , 986 So.2d 1260 at 1271-72 ). The supreme court affirmed this decision without discussing potential means of compelling payment. Schwefringhaus , 188 So.3d at 846.
Here, neither sovereign immunity nor the separation of powers doctrine prohibits respondents from bringing a breach of contract claim against governmental entities. A number of issues remain for the court to determine, including whether the gift agreements were express written contracts that the governmental entities were authorized to enter into, which entities were parties to those contracts, and whether any of the parties breached those contracts. However, assuming respondents can prove this claim, the trial court may have the authority to establish an appropriate remedy for breach of contract.
We are not unmindful that certain remedies that may be crafted by the circuit court would violate separation of powers. However, it is too early to make a final determination regarding the jurisdiction of the court to entertain a breach of contract action.
Count 4: Declaratory Judgment
In Count 4, respondents sought a declaratory judgment stating (a) article III, section 12 of the Florida Constitution has been violated by the failure to provide matching funds; (b) contracts with respondents and the donors have been materially breached by the failure to provide matching funds; and (c) article III, section 12 of the Florida Constitution has been violated by the failure to make adequate provision for the institutions of higher learning.
The first item reflects the argument made in Count 1, which as discussed above, violates the separation of powers doctrine. It appears the third item was intended to allege a violation of *788 article IX, section 1(a), which requires adequate provision for schools. That item reflects the argument made in Count 3, which the trial court dismissed as violating the separation of powers doctrine. However, regarding the second item, respondents may be entitled to a declaratory judgment on the breach of contract claim, as discussed pursuant to Count 2. Thus, we deny the petition for writ of prohibition in part and grant it in part as to count 4.
We GRANT the petition for writ of prohibition in part, QUASH the trial court's order denying the motion to dismiss in part, and instruct the trial court to dismiss Count 1, Count 4 to the extent it sought a declaratory judgment that the Legislature violated article III, section 12 and article IX, section 1(a) of the Florida Constitution, and the requested relief of an injunction prohibiting the Legislature from enacting future appropriations bills. In all other regards, we DENY the petition.
Bilbrey and M.K. Thomas, JJ., concur.

The trial court previously dismissed Count 3 and that count is not at issue in this proceeding. Count 5 is not directed to the Legislature, and therefore is not within the scope of the Legislature's petition.

For purposes of this opinion, when we refer to the "respondents" we are referring to the plaintiffs, though we acknowledge that the remaining defendants who did not file this petition for writ of prohibition are respondents to the petition as well.